**SADLER, Edward, Appellant,**

v.

**Sheriff, SULLIVAN, Joseph A., Philadelphia County, Patton, Ernest S., Superintendent State Correctional Institution at Camp Hill and the Attorney General of the State of Pennsylvania.**

**No. 83–1925.**

United States Court of Appeals, Third Circuit.

Argued July 20, 1984.

Decided Nov. 20, 1984.

Karl Baker (Argued), Defender Association of Phila., Philadelphia, Pa., for appellant.

Jane Cutler Greenspan, Steven J. Cooperstein, Asst. Dist. Attys. (Argued), Philadelphia, Pa., for appellees.

Before ADAMS, HIGGINBOTHAM and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Edward Sadler, a state prisoner, appeals from the district court's denial of his petition for habeas corpus relief under 28 U.S.C. § 2254 (1982). He alleges that the Commonwealth of Pennsylvania has denied him equal protection of the laws by applying its one hundred eighty-day "prompt trial rule", Pa.R.Crim.P: 1100, from the date of his certification by the Juvenile Court to stand trial as an adult in the Criminal Trial Division, Court of Common Pleas, rather than from the date juvenile proceedings were commenced by the juvenile petition. We will affirm the district court.

### I.

Edward Sadler, who was then fifteen years old, participated in two robberies on July 6, 1978. On July 18, 1978, the police arrested him for the robbery involved in this appeal and apparently later released him. Juvenile proceedings were commenced by the Commonwealth pursuant to 42 PA.CONS.STAT. § 6321 (1978), on July 19, 1978, with the filing of a juvenile petition; the petition alleged delinquency and charged Sadler with robbery, theft, receiving stolen property, criminal conspiracy and simple assault.[1] The Juvenile Court initially listed the case for August 9, 1978, and then continued the case to September 5, 1978 for an adjudicatory hearing. On August 15 and 24, 1978, respectively, the Commonwealth notified Sadler that it in-

---

1. Generally, a child who commits acts which would be criminal offenses if committed by an adult comes within the jurisdiction of Pennsyl- vania's "Juvenile Act," 42 PA.CONS.STAT. §§ 6301–6365 (1978).

tended to request his certification to stand trial in the adult criminal court for the two robberies, pursuant to 42 PA.CONS.STAT. § 6355(a) (1978).[2]

The complaining witness failed to appear at the September 5 hearing, and the Juvenile Court continued the case to September 28, 1978. Sadler failed to appear on that date. The police arrested him on October 11, 1978, and held him in custody. At the next listing, October 23, 1978, the complainant again failed to appear, but the court ordered updated neuropsychiatric studies and listed the case for a status report on October 26, 1978. On October 26, the court continued the hearing to November 2, 1978. On that date, the complainant failed to appear again and the court continued the hearing to November 14, 1978. The court also scheduled certification hearings for both of the July robberies on November 14, 1978. At that time the Commonwealth presented evidence relating to the robbery not at issue here. The court found Sadler "amenable to treatment" within the juvenile system, denied the certification request, adjudged him to be delinquent, and committed him to Cornwells Heights, a youth facility. The complainant in this case, however, again failed to appear. The

court thus continued the hearing. On December 12, 1978, the court found that the Commonwealth had established a prima facie case of delinquency, but continued the hearing on the issue of amenability until January 8, 1979, pending an institutional report from Cornwells Heights.

On January 8, the Juvenile Court found Sadler not to be amenable to treatment and certified him to stand trial as an adult in the Court of Common Pleas, Criminal Trial Division. One hundred sixty-eight (168) days later, on June 25, 1979, the criminal court tried and convicted Sadler of all charges in a bench trial. The trial and conviction came three hundred forty-one (341) days after the Commonwealth filed the juvenile petition.

After the trial court notified Sadler's counsel that he should raise the issue, he argued in one of the post-trial motions that, as a certified juvenile, Sadler was entitled to the same speedy trial protections as adults, but that the Commonwealth's failure to apply Pa.R.Crim.P. 1100(a)(2)[3] from the date of its filing of the juvenile petition, rather than from the date of the criminal complaint, denied Sadler equal protection under the fourteenth amendment. Since

2. At the time relevant to this appeal, that subsection provided:

After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this Commonwealth, the court before hearing the petition on its merits may rule that this chapter is not applicable and that the offense should be prosecuted, and transfer the offense, where appropriate, to the division or a judge of the court assigned to conduct criminal proceedings, for prosecution of the offense if all of the following exist:
  (1) The child was 14 or more years of age at the time of the alleged conduct.
  (2) A hearing on whether the transfer should be made is held in conformity with this chapter.
  (3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing.
  (4) The court finds:
    (i) that there is a prima facie case that the child committed the delinquent act alleged
    (ii) that the delinquent act would be considered a felony if committed by an adult; and

    (iii) that there are reasonable grounds to believe all of the following:
    (A) That the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities. In determining this the court may consider age, mental capacity, maturity, previous records and probation or institutional reports.
    (B) That the child is not committable to an institution for the mentally retarded or mentally ill.
    (C) That the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult. (1978 Pamphlet).

3. According to this subsection:
    "[t]rial in a court case in which a written complaint is filed against the defendant after June 3, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

Sadler's trial did not begin within one hundred eighty (180) days of the petition, he argued that the court should set aside Sadler's conviction. The trial judge agreed, granted the motion, and ordered Sadler to be discharged. *Commonwealth v. Sadler,* 3 Phila. 316 (1979).[4] The Pennsylvania Superior Court, however, reversed. *Commonwealth v. Sadler,* 301 Pa.Super. 228, 447 A.2d 625 (1982). Relying on the fact that the Pennsylvania Rules of Criminal Procedure are not applicable to juvenile proceedings,[5] as well as its decision in *Commonwealth v. Bell,* 245 Pa.Super. 164, 369 A.2d 345 (1976), *aff'd mem.,* 481 Pa. 229, 392 A.2d 691 (1978),[6] the Superior Court held that the Rule 1100 period did not begin to run for Sadler until January 8, 1979, the date of his certification and transfer to criminal court. 301 Pa.Super. at 231–232, 447 A.2d at 626. The court further held that its conclusion did not violate the Equal Protection Clause since the Pennsylvania Supreme Court "could rationally adopt a rule of criminal procedure establishing a fixed period for bringing criminal defendants to trial without applying that rule to juvenile delinquency proceedings." 301 Pa.Super. at 233, 447 A.2d at 627–28. On October 13, 1982, the Pennsylvania Supreme Court denied Sadler's Petition for Allowance of Appeal.[7]

On remand, the trial court sentenced Sadler to six to twelve months in prison.

Prior to his sentencing, Sadler had petitioned for a writ of habeas corpus in the U.S. District Court for the Eastern District of Pennsylvania. The district court approved and adopted the Report and Recommendation of the U.S. Magistrate, and dismissed the petition without an evidentiary hearing on December 19, 1983. Sadler filed a Notice of Appeal on December 23, 1983.

## II.

In order to grant habeas corpus relief pursuant to 28 U.S.C. § 2254, this court must find Sadler to be "in custody in violation of the Constitution or laws or treaties of the United States." Sadler argues, as he did unsuccessfully below, that Pennsylvania's failure to provide juveniles who are tried as adults the same prompt trial rights as adults, that is by applying Rule 1100 from the time of certification and transfer to criminal court rather than from the time of filing the juvenile petition, violates the Equal Protection Clause of the fourteenth amendment. Under strict equal protection scrutiny, he contends that only a compelling state interest could justify the exclusion of certified juveniles from the full benefit of Rule 1100 prior to certification and transfer under PA.CONS.STAT. § 6355. Alternatively, he argues the dis-

---

**4.** Pa.R.Crim.P. 1100(f) requires that a defendant apply for dismissal of charges against him or her for violation of Rule 1100 "[a]t any time before trial." Sadler preserved his right to dismissal here, however, by contending there had been ineffective assistance of counsel for failing to seek dismissal. *See Commonwealth v. Walley,* 262 Pa. Super. 496, 501 n.6, 396 A.2d 1280, 1283 n.6 (1978).

**5.** Pa.R.Crim.P. 1(a) provides:

"These rules shall govern criminal proceedings in all courts including courts not of record. Unless otherwise specifically provided, these rules shall not apply to juvenile or domestic relations proceedings."

**6.** Although the comment to Rule 1100 states that the term " 'complaint' also includes special documents used in lieu of a complaint to initiate criminal proceedings in extraordinary circumstances", the Superior Court in *Bell* held that "a

delinquency petition and any subsequent juvenile proceedings are not such 'extraordinary circumstances' as contemplated by the Supreme Court" and the 180-day period of Rule 1100 thus begins at the point a case comes within the jurisdiction of a criminal court. 369 A.2d at 346.

In addition the legislature has amended Rule 1100 (effective January 1, 1982), to codify the decisions in *Bell* and subsequent cases which reaffirm the *Bell* case. *See* Pa.R.Crim.P. 1100(a)(3):

"Trial in a court case which is transferred from the juvenile court to the trial or criminal division shall commence no later than one hundred eighty (180) days from the date of filing the transfer order."

**7.** Thus, Sadler has exhausted his state court remedies for purposes of federal habeas corpus jurisdiction. *See U.S. ex rel. Geisler v. Walters,* 510 F.2d 887, 892 (3rd Cir.1975).

trict court incorrectly found a rational basis for Pennsylvania's refusal to apply the rule from the date of filing the juvenile petition. Initially, then, we must determine the appropriate standard of equal protection scrutiny applicable to Pennsylvania's interpretation of Pa.R.Crim.P. 1100(a)(2) as to Sadler and, second, whether Sadler has shown a constitutional violation under that standard.

### A.

The U.S. Supreme Court has essentially established a two-tiered approach to equal protection analysis.[8] The Court will tolerate government actions which discriminate against suspect classes or impinge upon fundamental interests only if such actions are necessary to achieve a compelling governmental interest. The Court subjects other government actions that result in some persons being treated differently from others, especially those in the economic, social welfare or regulatory fields to far less scrutiny, and will uphold those actions unless they are not rationally related to legitimate government purposes. *See Murillo v. Bambrick,* 681 F.2d 898, 901 (3d Cir.1982), *cert. den.,* 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982).[9]

### B.

Since Sadler does not contend that "youth" is a suspect classification, *cf. Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976) (holding that old age is not a suspect classification), our inquiry here must focus on whether Pennsylvania's different application of its prompt trial rule impinges on a fundamental interest.

Sadler contends that since Rule 1100 was promulgated to "more effectively protect" and implement the fundamental sixth amendment right to speedy trial,[10] a right to which he claims juveniles are entitled, this court must evaluate the alleged denial of equal protection under the strict scrutiny standard. Appellant's Brief at 22–25. We disagree. Although the sixth amendment right to a speedy trial clearly is fundamental, *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967),[11] and even assuming juveniles are entitled to that right,[12] the amendment and rule 1100 provide separate bases for asserting that there has been an undue delay in bringing a case to trial. *Jones v. Commonwealth,* 495 Pa. 490, 499–500, 434 A.2d 1197, 1201

---

8. *See generally Developments in the Law—Equal Protection,* 82 Harv.L.Rev. 1065, 1076–1132 (1969).

9. The Court also employs an intermediate standard of review in such classifications as those based upon gender, alienage, and illegitimacy and will find these classifications acceptable if they are substantially related to important governmental interests. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (gender); *Foley v. Connelie,* 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978) (alienage); and *United States v. Clark,* 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980) (legitimacy). Sadler does not contend that this standard of review applies here.

10. *Commonwealth v. Hamilton,* 449 Pa. 297, 308, 297 A.2d 127, 133 (1972).

11. The sixth amendment right to speedy trial has been held applicable to state prosecutions under the Due Process Clause of the fourteenth amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 223–24, 87 S.Ct. 988, 993–94, 18 L.Ed.2d 1 (1967).

12. Though we need not reach the issue here, we note that there is some doubt as to whether the fundamental sixth amendment right to speedy trial applies to juveniles while they are still within the juvenile court system. *See generally McKeiver v. Pennsylvania,* 403 U.S. 528, 541, 91 S.Ct. 1976, 1984, 29 L.Ed.2d 647 (1971). The U.S. Supreme Court has held that, under the Due Process Clause of the fourteenth amendment, fundamental fairness requires that juveniles receive the benefit of certain essential constitutional protections which the Constitution provides adults accused of criminal offenses. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond a reasonable doubt); *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy). A juvenile proceeding, however, "has not yet been held to be a 'criminal prosecution' within the meaning and reach of the sixth amendment." *McKeiver,* 403 U.S. at 541, 91 S.Ct. at 1984.

(1981). The particular terms of the rule "are neither directly granted by nor required by the Constitution." *Commonwealth v. Myrick*, 468 Pa. 155, 161, 360 A.2d 598, 600 (1976).

■ As to the inapplicability of Rule 1100(a)(2) here, the Pennsylvania courts' different and allegedly more adverse treatment of juveniles does not necessarily constitute either a violation of the equal protection guarantees of the fourteenth amendment or the sixth amendment right to speedy trial as incorporated into the fourteenth amendment. The sixth amendment provides no requirement that a state must bring a criminal defendant to trial within one hundred eighty (180) days or any other specified period of time. *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972). Courts must analyze alleged sixth amendment speedy trial violations on an *ad hoc* basis under *Barker v. Wingo*, by balancing the length of delay, the reason for the delay, the defendant's assertion of the right, and the prejudice, if any, to the defendant. 407 U.S. at 530, 92 S.Ct. at 2192.

■ Even if, as Sadler contends, the fundamental right to speedy trial attaches at the time of filing the juvenile petition, an analysis of these factors reveals the following:

1. *Length of Delay*

This Court has held that a fourteen-month delay was not such a great amount of time as to be dispositive of an alleged violation of the sixth amendment right to speedy trial. *United States ex rel. Stukes v. Shovlin*, 464 F.2d 1211, 1214 (3rd Cir. 1972). We must weigh the three hundred forty-one (341) day delay here, however, with the other factors set forth in the *Barker* case.

2. *Reason for Delay*

The delay between the date of the juvenile petition and the certification hearing was caused primarily by the failure of the complaining witness to appear at the listed court dates. At no time during the course of proceedings did Sadler's counsel object to these delays. Additional delay was caused by Sadler's failure to appear at the hearing on September 5, 1978, and the Juvenile Court's order for updated neuropsychiatric reports on October 23, 1978 to provide himself with more accurate information to adjudicate Sadler's case or to make a determination as to whether Sadler was amenable to treatment within the juvenile system. We find that the judicial delay was reasonable. Sadler's failure to appear at his hearing and his counsel's failure to object to the prosecutorial delay weigh more heavily against Sadler.

3. *Assertion of the Right*

In a post-trial motion, Sadler claimed that his rights under Rule 1100, rather than under the sixth amendment, were violated. Regardless of whether the defense counsel thought the two rights were one in the same, he never requested that Sadler be tried; and, as the U.S. Supreme Court emphasized in *Barker*, the "failure to assert the right will make it difficult for a defendant to prove that he has been denied a speedy trial." 407 U.S. at 532, 92 S.Ct. at 2193.

4. *Prejudice*

Sadler has not shown that he was prejudiced either by oppressive pre-trial detention, impairment to his defense, or any anxiety or concern he suffered over his case. *See Barker*, at 532, 92 S.Ct. at 2193.

In balancing the above factors, we find no infringment of the fundamental right to speedy trial.

The Commonwealth would have violated the time limitations of Rule 1100(a)(2) if that subsection commenced on the date it filed the juvenile petition. In the absence of an infringement of a fundamental right, however, the appropriate level of scrutiny here is the general rational relationship standard.

## C.

■ Applying this standard, Sadler contends that the judicial interpretation of Rule 1100(a)(2) arbitrarily discriminates

against him, and there is no rational basis for such discrimination. He further contends that the differing purposes and character of juvenile proceedings lack relevance here because he was certified to stand trial as an adult. Again we disagree.

The purposes of Pennsylvania's Juvenile Act are set forth in 42 PA.CONS.STAT. § 6301(b).

(1) To preserve the unity of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter.

(2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation.

(3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare or in the interests of public safety.

(4) To provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

In furtherance of these purposes a probation officer or other officer may refer a juvenile to social service agencies for advice, counsel, and "informal adjustment" of an alleged delinquency prior to the filing of a juvenile petition. 42 PA.CONS.STAT. § 6323. If the Commonwealth files a juvenile petition and the court holds an adjudicatory hearing, it must conduct the hearing informally. 42 PA.CONS.STAT. § 6336(a). The court must keep only the full minutes of the proceeding rather than a stenographic record, and it must exclude the general public from the hearing, limiting access to the parties, their counsel, witnesses, and other persons which the court deems to have a proper interest. 42 PA. CONS.STAT. § 6336(c) and (d).

Probation officers and other juvenile justice personnel also assist the Juvenile Court in determining how it should handle a juvenile's case. 42 PA.CONS.STAT. §§ 6304(a)(1), 6339, and 6355. After a notice to request certification has been filed, a favorable social study and report concerning the child, his or her family and environment, and other matters relevant to disposition of the case, may result in the court denying the request. We cannot hold that the appellee's position is without a rational basis when he asserts that the imposition of the one hundred eighty-day limitation in rule 1100(a)(2) could undermine the investigations of juvenile justice personnel and hamper their ability to make a thorough report as well as the Court's ability to properly consider the factors set forth in section 6355(a) to determine whether a child is amenable to treatment, supervision, or rehabilitation within the juvenile system.

Sadler argues before us with the advantage of hindsight. He knows that he was ultimately certified and transferred to criminal court, and he argues that therefore Rule 1100 should apply from the date his juvenile petition was filed. At the outset of a juvenile proceeding, however, no one knows for certain whether the juvenile court will certify a fifteen-year old such as Sadler to stand trial as an adult, or whether the court will allow the minor to remain subject to the less harsh penalties of the juvenile system.[13] The minor receives all of the protections and advantages of the juvenile court system until certification and transfer takes place.

The above purposes and the character of Pennsylvania juvenile proceedings promote the legitimate government interest of protecting the juvenile from the consequences of his criminal activity. *Schall v. Martin*,

---

13. For example, 42 PA.CONS.STAT. § 6353(a) (1978) provides in part:

"No child shall initially be committed to an institution for a period longer than three years or a period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less."

— U.S. ——, 104 S.Ct. 2403, 2411, 81 L.Ed.2d 207 (1984). As the Court stated in *Schall v. Martin,* "[t]he State has 'a *parens patriae* interest in preserving and promoting the welfare of the child', ... which makes a juvenile proceeding fundamentally different from an adult criminal trial". 104 S.Ct. at 2409, quoting *Santosky v. Kramer,* 455 U.S. 745, 766, 102 S.Ct. 1388, 1401, 71 L.Ed.2d 599 (1982). Children "are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as *parens patriae*". 104 S.Ct. at 2410. (citations omitted). We cannot say that Sadler's exclusion from the provisions of Rule 1100 does not bear a rational relationship to this legitimate interest.

Because of the importance of the protections and advantages of juvenile proceedings, which constitute a significant difference between adjudication as a juvenile and trial as an adult, we believe that procedural rule 1100(a)(2) need not apply to juveniles until they lose the protections of the juvenile court system and become subject to the same penalties as adults. Thus, we hold that the Equal Protection Clause does not require Pennsylvania to apply its one hundred eighty-day "prompt trial rule" from the date it files a juvenile petition and, therefore, Sadler is not entitled to a writ of habeas corpus.

## CONCLUSION

For the reasons stated in the above opinion, we will affirm the district court's denial of habeas corpus relief.