**CLARK, James, Appellant,**

v.

**COMMONWEALTH OF PENNSYLVA-NIA, Zimmerman, Charles and the Attorney General of the State of Pennsylvania, Zimmerman, Leroy and District Attorney of Philadelphia.**

No. 89–1499.

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1989.

Decided Dec. 27, 1989.

Rehearing and Rehearing In Banc Denied Jan. 25, 1990.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

James Clark, a state prisoner presently incarcerated at Graterford State Prison, filed three separate petitions seeking federal habeas corpus relief. Two of the petitions, concerning 1974 convictions for which Clark has completed serving his sentences, fail to meet the threshold jurisdictional requirements of 28 U.S.C. §§ 2241(c), 2254(a) (1948) that a petitioner be in custody for the allegedly defective conviction presented for scrutiny.[1] Our review is thus limited to the third petition filed by Clark regarding a 1979 conviction for which he remains incarcerated.[2]

The essence of this petition is Clark's allegation that the judge who sentenced him for a 1979 conviction wrongly took into consideration the two previous convictions. These convictions were obtained in criminal court at a time when Clark was a juvenile, yet Clark was not afforded a hearing concerning his minor status and how his age should impact upon the criminal proceedings pending against him. Clark asserts, *inter alia*, that the failure to conduct such a hearing deprived him of his constitutional guarantee of due process.

Although the district court held that the alleged constitutional deficiencies were not present and that Clark's due process rights were protected during the 1974 judicial proceedings, we disagree. We conclude instead that the 1974 sentencing judge erred in not ascertaining Clark's juvenile status in light of the evidence of record. This failure denied Clark the important procedural safeguards provided to juveniles un-

David McColgin (argued) Defender Ass'n of Philadelphia Federal Courts Div., Philadelphia, Pa., for appellant.

Elizabeth J. Chambers (argued), Chief, Federal Litigation, Gaele McLaughlin Barthold, Deputy Dist. Atty., William G. Chadwick, Jr., First Asst. Dist. Atty., and Ronald D. Castille, Dist. Atty., Dist. Atty.'s Office, Philadelphia, Pa., for appellees.

Before GIBBONS, Chief Judge, MANSMANN, Circuit Judge, and GERRY, District Judge.*

* Honorable John F. Gerry of the United States District Court for the District of New Jersey, sitting by designation.

1. *See Maleng v. Cook,* —— U.S. ——, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989) (Court has never held that habeas petitioner is in custody when sentence imposed for particular conviction fully expired at time petition filed).

2. Although subject matter jurisdiction is lacking over the two earlier petitions, these convictions nonetheless are subject to limited review in the third petition because of their collateral consequences on the later 1979 conviction. We are

cognizant of the Supreme Court's concluding remark in *Maleng:*
> Our holding is limited to the narrow issue of "custody" for subject matter jurisdiction of the habeas court. We express no view on the extent to which the [earlier] conviction itself may be subject to challenge in the attack upon the [later] sentences for which it was used to enhance.

*Id.* 109 S.Ct. at 1927. Accord *Carafas v. LaVallee,* 391 U.S. 234, 236–38, 88 S.Ct. 1556, 1558–59, 20 L.Ed.2d 554 (1968) (collateral consequences of conviction can prevent mootness of habeas petition; however, they cannot confer jurisdiction on court.) See *infra* at 1150–51.

der Pennsylvania law. Thus, under the mandate of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the matter must be remanded for resentencing of the 1979 conviction with instruction that the 1974 convictions, obtained in violation of Clark's constitutional right to due process, not be considered in the imposition of the sentence.

## I.

The historical facts surrounding the crimes committed need not be outlined in detail; rather, the post-arrest events command our attention.

On separate dates in November 1973 criminal complaints were lodged against Clark for two incidents of sexual assault. On the first offense, Clark entered a no contest plea to attempted rape and was sentenced to 3 to 23 months in prison. After a bench trial on the second offense, Clark was found guilty of felonious assault. A sentence of 11½ to 23 months imprisonment was ordered. Clark took no direct appeal from these convictions. He completed serving both sentences in 1978.

In 1979 a jury found Clark guilty of rape, indecent assault, unlawful restraint, aggravated assault and possessing an instrument of crime. On the day that Clark's post-trial motions were scheduled for argument, he escaped. Under the dictates of the Pennsylvania fugitive forfeiture rule,[3] the pending post-trial motions were then dismissed. Upon recapture Clark was sentenced to serve 10 to 20 years for rape and to a consecutive 2 to 5 year sentence for felonious restraint. In imposing sentence, the judge took into consideration the two 1974 convictions whose sentences Clark had just finished serving. The Pennsylvania Superior Court affirmed the judgment of sentence. *Commonwealth v. Clark*, 300 Pa. Super. 315, 446 A.2d 633 (1982). The Pennsylvania Supreme Court denied review.

Meanwhile, in October of 1980, Clark filed a petition under the then-applicable Pennsylvania Post–Conviction Hearing Act ("PCHA"), 42 Pa.Cons.Stat.Ann. § 9541 *et seq.* (Purdon 1982), challenging the jurisdiction of the trial court over his 1973 violations. The petition was later amended to allege ineffective assistance of counsel. Clark's argument against jurisdiction was that he was only 17 at the time the crimes were committed and that Pennsylvania law entitled him to a juvenile court hearing to determine whether he should have been treated as a juvenile offender or tried as an adult. *See* 42 Pa.Cons.Stat.Ann. § 6322 (Purdon 1978). The ineffectiveness claim was related. Clark averred that representation was inadequate because his trial counsel failed to ascertain Clark's true age and was derelict in not bringing Clark's juvenile status to the attention of the court; in sum, an allegation that counsel failed to question the trial court's jurisdiction. A post-conviction hearing was held, at which Clark declined to present testimony from his 1973 trial counsel and, instead, "stood" on the record. The PCHA court found as a fact that both the trial court and counsel were unaware of Clark's actual age. Since this awareness is a requirement before a juvenile certification hearing is required under the Pennsylvania statute, the post-conviction petition was denied. The Superior Court affirmed the denial of collateral relief. *Commonwealth v. Clark*, 344 Pa. Super. 620, 495 A.2d 610 (1985). Clark's request for allowance of appeal to the Pennsylvania Supreme Court was denied.

On October 28, 1985, seven years after he completed serving his sentences for the 1974 offenses, Clark filed two federal habeas petitions challenging those convictions. In 1986, he filed a third petition asserting that the 1980 sentence ordered for his 1979 conviction was unconstitutionally imposed as it was based upon infirmities in the two 1974 convictions. He also raised the argument that his counsel was ineffective in the 1979 case for failure to request reinstatement of his post-trial motions after his recapture and for not raising the illegality

---

**3.** The Pennsylvania rule provides in relevant part:

Rule 1972. Dispositions on Motion Subject to Rule 123 ..., any party may move:

\* \* \* \* \* \*

(6) To continue generally or to quash because the appellant is a fugitive.

Pa.R.App.P.1972.

of the 1974 adult convictions. The three petitions were consolidated.

On August 24, 1987, a United States magistrate recommended that the petitions be provisionally granted and the matter remanded for the state court to hold a certification hearing on the two 1974 convictions. Then, if the court of common pleas determined that the waiver of juvenile court jurisdiction was improper, the magistrate advised that the 1974 convictions should be vacated and Clark resentenced without consideration of these illegally obtained convictions.

Both the government and Clark filed objections to the magistrate's report.[4]

On May 31, 1989, the district court rejected the magistrate's recommendation. The two petitions concerning the 1974 convictions were denied on jurisdictional grounds. As to the third petition concerning the 1980 sentence, the district court first determined that the statutory exhaustion of state remedies requirement was satisfied with regard to the issue of the application of the Pennsylvania fugitive forfeiture rule. The district court did not address the exhaustion question posed concerning the due process claim.

Next, regarding waiver, the district court decided that the state court dismissal of the then-pending post-trial motions occasioned by Clark's flight from the jurisdiction, constituting a procedural default under the Pennsylvania fugitive forfeiture rule, did not preclude federal review of Clark's habeas claims.

Having overcome these procedural obstacles, the district court proceeded to the merits of the remaining petition. Despite its conclusion that under *United States v. Tucker*, 404 U.S. at 448, 92 S.Ct. at 592, the 1974 convictions were reviewable, the district court decided that Clark's substantive allegations were meritless. Specifically, the district court held that the failure to hold a juvenile certification hearing in the 1974 cases did not violate Pennsylvania law nor did it deny Clark due process. As to

the ineffectiveness claim, the district court found that trial counsel's failure to ascertain his client's actual age did not constitute constitutionally inadequate representation because Clark failed to show both prongs of the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) test—incompetence of counsel and prejudice resulting from an allegedly deficient performance. Finally, the district court rejected the claims that counsel was ineffective at the sentencing of the 1979 case. The district court found probable cause to appeal. We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253 and exercise plenary review over the legal questions presented.

## II.

As is often the case in habeas petitions presented for federal review, this matter poses questions of jurisdiction, exhaustion and procedural default. Here these issues are not dispositive, nonetheless, are perplexing enough to warrant some discussion.

### A. Jurisdiction

In light of the Supreme Court's recent decision in *Maleng v. Cook*, —— U.S. ——, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989), Clark now concedes that he is no longer in custody as a result of the 1974 convictions and, accordingly, admits that the district court does not have jurisdiction to consider the merits of those petitions. The reviewability of those convictions nonetheless remains before us, as discussed *infra*, because of their collateral enhancement consequences on the 1980 sentence.

### B. Exhaustion

First, we address the exhaustion question summarily as it arises in the context of the fugitive forfeiture rule. The district court agreed with the magistrate that the impact of the application of the Pennsylvania fugitive forfeiture rule, occasioning a

---

4. Clark objected to the report because it failed to require that the de novo certification hearing be held within a reasonable time. This objection was tacitly dismissed by the district court's reversal of the magistrate's recommendation.

**1146**

state procedural default, was not an issue subject to the exhaustion requirement. The district court reasoned that because Clark had not raised the issue of the applicability of the rule as an independent basis seeking relief but, rather, invoked it only as a response to the government's assertion that he committed a procedural default which bars habeas relief, he need not have exhausted this by direct review.

The government did not cross-appeal concerning the district court's determination and we are satisfied that the district court's conclusion in this regard was correct.

■ The government contended, however, at oral argument before us, that Clark's request for relief on due process grounds, occasioned by the failure to provide him with a certification hearing to determine his juvenile status, was not exhausted. According to the government, this claim was raised in the state courts only as a jurisdictional issue, i.e., because of Clark's juvenile status, the court of common pleas did not have jurisdiction over him.

Although the district court did not address whether Clark exhausted the claim, we find that this question poses a significant problem requiring discussion in some detail.

That 28 U.S.C. § 2254(b) embodies the requirement that state remedies must be completely exhausted before federal courts will grant habeas corpus relief needs no further elaboration. But how this requirement is satisfied is not so readily ascertainable. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), instructs us to question if the federal claim has been fairly presented to the state courts. In determining what constitutes a fair presentation, we must inquire whether the claim presented to the state court is the substantial equivalent of that presented in the federal habeas corpus petition. *Id.* at 278, 92 S.Ct. at 513.[5] This requires " 'a

searching scrutiny by the federal habeas court of the points that were raised in the state tribunals, in order to ensure that the state system was granted a fair opportunity to confront arguments that are propounded to the federal habeas courts.' " *Bisaccia v. Attorney General of State of New Jersey*, 623 F.2d 307, 310, (3rd Civ.) *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980) *quoting, Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir.1976) (in banc).

■ In *Duttry v. Petsock*, 878 F.2d 123 (3d Cir.1989), we reiterated the necessity for the district court to review the state court records relevant to exhaustion to determine if that jurisdictional requirement is satisfied. If the district court has been remiss in this obligation, the matter must be remanded so that the search be accomplished. *See also Ross v. Petsock*, 868 F.2d 639, 643 (3d Cir.1989), Gibbons, C.J., dissenting, (disagreeing with majority's, albeit disapproving, excusal of district court's failure to comb state court record).

It is problematic that the record here does not show whether the district court reviewed the state court record for purposes of determining the due process exhaustion issue. Given the age of this matter, we are, however, very reluctant to remand on this limited question since such an action would cause further delay and potentially yield yet another appeal. Nonetheless, we will not overstep our review boundaries; we are not the proper tribunal to undertake an independent search of the record. Instead, we seek alternate recourse to resolve the exhaustion issue and find an avenue provided by our recent decision in *Peoples v. Fulcomer*, 882 F.2d 828 (3d Cir.1989).

In *Peoples*, a case revisited by us on remand from the Supreme Court, we observed that a petitioner's claim can be considered exhausted when it is clear that it would be procedurally barred under Pennsylvania law. *Id.* at 830. We took our lead

**5.** The Court in *Picard* carefully noted that: "[We] do not imply that respondent could have raised the [constitutional] claim only by citing 'book and verse on the federal constitution.'

(Citations omitted.) We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts." *Id.* at 278, 92 S.Ct. at 513.

from the Supreme Court's language in its review of the matter in *Castille v. Peoples,* —— U.S. ——, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). There the Court announced that the customary bar to federal review caused by failure of presentation of a particular claim to the state courts may not be present if the petitioner's claim would now be procedurally barred under state law. *Id.* 109 S.Ct. at 1060. *See also Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (state collateral relief not available for non-exhausted habeas claim, thus, exhaustion satisfied under 28 U.S.C. § 2254(b)).[6]

We then turned, as we do now, to the newly revised Pennsylvania statute governing such collateral actions. Pennsylvania's prior Post–Conviction Hearing Act had been modified in part, repealed in part, and renamed the Post–Conviction Relief Act, 42 Pa.Cons.Stat.Ann. § 9541 *et seq.* (Purdon Supp.1989)("PCRA"). We viewed the PCRA as incorporating a preference that Pennsylvania courts confront post-conviction challenges. *Peoples,* 882 F.2d at 832, n. 2.

With this preference in mind and noting dismay for the necessary conjecture, we trace the probable path Clark's current claim would travel in the current Pennsylvania post-conviction system. Under the PCRA, Clark must plead and prove a number of matters relevant to the alleged due process violation before establishing eligibility for relief. Under 42 Pa.Cons.Stat.

Ann. § 9543(a) Clark must demonstrate by a preponderance of the evidence that he is currently serving a sentence for conviction of the crime which, in this case, arose from a violation of the Constitution of the United States which would require the grant of federal habeas relief. § 9543(a)(i)(1), (a)(2)(v).[7]

Next, Clark must show, under § 9543(a)(3):

(3) That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

42 Pa.Const.Stat.Ann. § 9543(a)(3).

A claim has been previously litigated if:

(1) it has been raised in the trial court, the trial court has ruled on the merits of the issue and the petitioner did not appeal;

(2) the highest appellate court in which the petitioner could have had review as a

**6.** Perhaps the better reading of *Peoples, Castille* and *Teague* is that a futile return to the state court system excuses, not satisfies, exhaustion.

**7.** Although it would appear that § 9543(a)(2)(vii), providing relief if the sentence resulted from a proceeding in a tribunal without jurisdiction, might also be applicable, this means for relief is unavailable because Clark is not currently serving a sentence for those offenses committed while a juvenile. Indeed, Clark's "no longer in custody" status is one of the reasons why Clark's 1980 PCHA petition was denied by the Philadelphia County Court of Common Pleas and by the Pennsylvania Superior Court. *Commonwealth v. Clark,* 344 Pa.Super. 620, 495 A.2d 610 (1985). Although under Pennsylvania law the fact that a PCHA petitioner has completed his sentence will not result in an absolute bar if there is an allegation that there exists the possibility of criminal conse-

quences arising directly from the prior conviction, *Commonwealth v. Rohde,* 485 Pa. 404, 402 A.2d 1025 (1979), Clark did not pursue this argument in the Pennsylvania courts. In his brief to the PCHA court, Clark did advance a related argument that counsel was ineffective for failing to request that his case be transferred to the Family Court Division and in support claimed that one of the benefits of juvenile adjudication was the absence of collateral consequences from such an adjudication. Clark abandoned this argument before the Superior Court. The Superior Court nonetheless commented that if possible collateral consequences are alleged from a conviction whose sentence has been satisfied, relief is not necessarily barred. The court then noted that Clark merely alluded to such consequences in his ineffectiveness argument, but did not pursue it on appeal.

matter of right has ruled on the merits of the issue; or

(3) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.

42 Pa.Cons.Stat.Ann. § 9544(a)(1).

The direct language of § 9544's definition of "previously litigated" belies the difficulty of applying its guidelines to Clark. Also, the irony of the requisite to examine the state court proceedings to ascertain whether Clark's claim has been previously litigated or waived is apparent. This is the exact activity spurned by us in announcing our reluctance to usurp the district court's role in finding exhaustion. Fortunately, we need not resolve the paradox since it is our opinion that the overriding exception barring entitlement to relief under the PCRA, prejudice to the Commonwealth, exists.

42 Pa.Cons.Stat.Ann. § 9543(b) reads:

(b) Exception.—Even if the petitioner meets the requirements of subsection (a), the petition shall be dismissed if it appears that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner. This subsection does not apply if the petitioner shows that the petition is based on grounds of which the petitioner could not have had knowledge by the exercise of reasonable diligence before the delay became prejudicial to the Commonwealth.

Here, both the delay, 16 years since the alleged due process violation, and the prejudice to the Commonwealth are present. The delay is self-evident and the prejudice to the Commonwealth is compelling. Although our issue is confined to the impact of the 1973 proceedings upon the 1980 sentence, the facts and circumstances surrounding the 1973 proceedings are dispositive of whether Clark's due process rights were violated. Given the death of the trial judge involved and the destruction of the relevant stenographic notes, to now defend against this issue in a collateral proceeding would be virtually impossible. Nor is this an instance where Clark did not have knowledge of the relevant facts before the delay became prejudicial. Granted he did not know precisely that the 1980 sentencing court would consider his earlier convictions, yet he knew at all times of the crucial underlying fact of his status as a juvenile at the time of the proceeding and the court and his counsel's failure to become aware of this factor.

It is our opinion that the Pennsylvania court would not entertain Clark's petition at this late date. Indeed, nine years earlier, the delay in filing his 1980 petition had been previously referred to and considered detrimental to the success of his claim. To return to the Pennsylvania courts would thus be a futile exercise allowing excusal of the exhaustion requirement as per *Castille v. Peoples*, 109 S.Ct. at 1060 and *Peoples v. Fulcomer*, 882 F.2d at 830.

## C. Procedural Default

■ The government also did not specifically cross-appeal the district court's determination that the Pennsylvania fugitive forfeiture rule did not constitute a procedural default of Clark's federal habeas claims. In a footnote the government contends that review of the issue is nonetheless proper since we may affirm the district court on any basis. Because the district court's conclusion on this issue, although correct, requires clarification, we discuss it briefly.

Before the district court the government argued that Clark's escape after his 1979 conviction constituted a procedural default which bars review of the issues raised. The chronology of events is pertinent: after Clark was convicted in 1979 of rape, robbery, unlawful restraint and possession of an instrument of a crime, he timely filed post-trial motions. On September 26, 1979, the day scheduled for oral argument of these motions, Clark escaped. The post-trial motions were then dismissed, we assume by motion of the government under Rule 1972. Clark was recaptured on July 25, 1980 and sentenced for the 1979 offenses on September 17, 1980. The Superior Court affirmed the judgment of his sentence on June 4, 1982 and the Supreme

Court denied allocatur. Clark has remained in custody since his apprehension.

Whether Clark's escape equates to a procedural default foreclosing federal habeas review is governed by whether our opinion in *Feigley v. Fulcomer*, 833 F.2d 29 (3d Cir.1987) controls.[8] In *Feigley*, we opined that an escape constitutes a knowing decision by the prisoner that he will not abide by the outcome of that court's lawful processes. Thus, we reasoned that it was unlikely that such a prisoner could ever be able to show "cause," *see Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for procedural default. *Feigley*, 833 F.2d at 31. We thereby decided that by escaping during the pendency of his state post-conviction petitions, Fiegley waived his right to assert this claim in his federal habeas petition.

The district court here held that *Feigley* did not apply.[9] We agree, although on an alternate basis. We are in accord with the district court that Rule 1972's facial language, permitting any party to move to continue generally or to quash a matter because an appellant is a fugitive, provides little or no guidance as to dismissal of claims arising after recapture. Although the district court added that the case law does not distinguish between claims arising before or after recapture, this is because the rule simply does not apply to motions arising after recapture. Clark was not sentenced until he was once again apprehended. His claims for federal habeas relief, unlike those in *Feigley*, are based upon events which arose at sentencing *following* his apprehension and do not directly

concern his original post-trial motions which were forfeited when he escaped. Thus, although we agree with the district court, first, that the Pennsylvania rule does not speak in unmistakable terms and, second, that the Pennsylvania cases construing the law are not consistent, we find that it was unnecessary to confront the procedural default argument by employing the fugitive forfeiture rule when its terms were simply not operational to the claim before the 1980 sentencing court.

### III.

We turn at last to the merits of the petition.

The district court made a positive determination as to reviewability of the 1974 convictions. Although these matters, lacking the "in custody" requirement of 28 U.S.C. § 2254(a), were beyond the district court's direct jurisdictional constraints, under the doctrine of the *United States v. Tucker*, 404 U.S. at 447, 92 S.Ct. at 591, they remain viable. In *Tucker*, a sentencing court gave specific consideration to two prior convictions which, having been obtained without the assistance of counsel in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), were constitutionally infirm. The court remanded the case for resentencing because the sentence was "founded at least in part upon misinformation of constitutional magnitude." *Id.*[10]

Although the government conceded at oral argument before the district court that review under *Tucker* was appropriate, it now contends that the magnitude of error

8. *Feigley* confronted what was then a matter of first impression in our court, i.e., whether a habeas petitioner, a prisoner who escaped and was then recaptured, satisfied the federal standard for disregarding a state law procedural bar. In answering, we applied the more liberal "cause and prejudice" standard of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) over the "deliberate by-pass" analysis of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Our opinion in *Feigley* did not dispute that under Pennsylvania law an escapee waived the right to seek relief from Pennsylvania courts, rather, the issue was whether the state law procedural bar should be disregarded in the federal proceedings.

9. The district court engaged in a detailed analysis of whether the Pennsylvania rule provided an independent and adequate ground for procedural default precluding us from delving into the claims of constitutional error in the state conviction. *See Neely v. Zimmerman*, 858 F.2d 144 (3d Cir.1988). We have no quarrel with the district court's dissection of the issue, rather, we feel its extent was unnecessary.

10. The only relief permitted under *Tucker* is resentencing on the subsequent conviction. This is the only relief Clark seeks in this case.

**1150**

alleged here, failure of counsel to request a certification hearing, does not rise to the level of constitutional deprivation such as the right to counsel in *Tucker.*

The district court decided that it was not necessary to tackle the question of the extent *Tucker* is to be applied to cases asserting constitutional defects other than deprivation of right to counsel. Instead, the district court found that the 1974 convictions were not obtained in violation of Clark's constitutional rights. Thus, although *Tucker* could trigger an evaluation of the constitutionality of the earlier sentences, it did not compel resentencing here, as the starting point, the presence of an invalid conviction, was missing.

We here part company with the district court and conclude instead that Clark was indeed deprived of his due process rights in 1973 when the trial court failed to provide him with a certification hearing. This denial of due process is a defect of constitutional magnitude which *Tucker* is designed to protect. Because the 1974 convictions were relied upon by the 1980 sentencing court, Clark is entitled to the relief provided by *Tucker* and must be resentenced.

Our decision that Clark was not afforded his due process rights emanates from our interpretation of the Pennsylvania statute and the caselaw analyzing its constitutional breadth.

### A.

■ Whether a juvenile certification hearing is required in Pennsylvania proceedings is controlled by 42 Pa.Cons.Stat. Ann. § 6322. The statute reads in relevant part:

§ 6322. Transfer from criminal proceedings.

(a) General Rule [I]f it appears to the court in a criminal proceeding other than murder that the defendant is a child, this chapter shall immediately become applicable, and the court shall forthwith halt further criminal proceedings, and, where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile hearings....

If Clark was in fact only 17 at the time of a criminal proceeding, he would be considered a child under Pennsylvania law. *See* 42 Pa.Cons.Stat.Ann. § 6302(1) (Purdon 1978).

The record contains conflicting information as to Clark's age at the time of the relevant criminal conduct in 1973. In two arrest reports filed by the police, Clark's birth date was recorded as March 20, 1954, which would place his age at 19 years. Two commitment orders entered in family court also stated Clark's age as 19. On the opposing side, a pre-trial services report stated, "Defendant said he is only 17." On that form, petitioner's date of birth was recorded as 3/23/57. Most significantly, the criminal complaint relating to the November 5, 1973 incident contained the notation "17 N/M," law enforcement nomenclature signifying that Clark was a 17-year-old Negro male. To further even the score, on Clark's behalf, there is the fact that Clark was indeed 17 years old at the time of the arrest, while, in the government's favor, is the state trial court's decision on the Pennsylvania post-conviction petition that the 1973 trial court was unaware of Clark's actual age since he represented that he was older at the time. Based upon the fairly equivalent distribution of record evidence concerning Clark's age, the district court found as a fact both that Clark was 17 at the time of his arrest and that the court was not aware of Clark's actual age.

Given the disparate record evidence, we cannot adhere to the usual 28 U.S.C. § 2254(d) presumption of correctness accorded to state factfinding procedures. This is simply because "the majority of facts were not adequately developed at the state court hearing." *See* 28 U.S.C. § 2254(d)(3). The PCHA court's finding that "the Court was not aware of the defendant's actual age" is simply not borne out by the record. Granted the documentation reveals conflicting evidence as to Clark's age, but there is no evidence of willful misstatement by Clark. In fact, the pretrial services report memorializes a directly contrary statement: "Defendant says he is only 17."

We tread cautiously in deciding exactly how this information activates application of the Pennsylvania certification statute. There is little guidance from the Pennsylvania courts as to how the statute's language is to be interpreted in this regard. Our research has not found a case delineating the scope of the trial court's obligation in divining the age of defendants. In *Commonwealth v. Sims*, 379 Pa.Super. 252, 549 A.2d 1280 (1988), the Pennsylvania Superior Court, *citing Commonwealth v. Harris*, 223 Pa.Super. 11, 297 A.2d 154 (1972), found that the Pennsylvania statute imposes a duty to transfer a criminal proceeding to a juvenile court if "it shall be ascertained that the person charged with the offense was under the age of 16 years at the time the alleged offense was committed." [11] In both *Sims* and *Harris* the defendants, on inquiry by the court, either misstated or refused to divulge their true ages. The court thus did not discuss the duty of the court to "ascertain" the true age of the defendants. But here, given the information indicating Clark's age as 17 included in documents which the trial court would have had before it (particularly the criminal complaint), we are constrained to conclude that the court should have been aware of Clark's juvenile status. The failure of the trial court to make any inquiry into Clark's age deprived him of the possibility of being adjudicated as a juvenile. The likelihood of his being so certified and the debate as to whether such an adjudication would have actually benefitted Clark are not germane. As a 17 year old, Clark was entitled to certain safeguards and the court was remiss in not, at the least, inquiring into Clark's eligibility for juvenile certification.

### B.

■ We next broach the question of whether the failure to provide Clark with a certification hearing deprived him of due process of law.

The seminal case on this issue is *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). According to the governing statute, Kent, a juvenile, was subject to the exclusive jurisdiction of the District of Columbia juvenile division unless, after full investigation, that court should waive jurisdiction. A motion had been filed in juvenile court for a hearing on the question of waiver and for access to the juvenile court's social service file prepared during Kent's probation for a prior offense. The juvenile court did not rule on these motions, but instead, it entered an order waiving jurisdiction accompanied by the recitation that the waiver followed the required full investigation. After Kent was indicted as an adult, he moved to dismiss the indictment, alleging that the juvenile court's waiver was invalid, presenting various arguments as to the infirmity of the proceedings by which the jurisdiction of the juvenile court was waived. Although the Supreme Court agreed that the statute contemplated that the juvenile court should have considerable latitude within which to determine whether it should retain jurisdiction over a child, it decreed that this latitude was not all encompassing. The Court concluded that the juvenile proceeding must comport with procedural regularities sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness. *Id.* at 557, 86 S.Ct. at 1055.

*In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), provided the Supreme Court with further opportunity to outline the procedures necessary for an adjudication of delinquency. The Court re-emphasized the necessity that basic requirements of due process and fairness must be satisfied in such proceedings. *Gault*, 387 U.S. at 12, 87 S.Ct. at 1435.

We confronted the Pennsylvania juvenile's right to due process in *United States ex rel. Turner v. Rundle*, 438 F.2d 839 (3d Cir.1971). In *Turner*, we evaluated a transfer from juvenile to criminal court and

---

11. The court in *Harris* was referring to an earlier statute, 11 Pa.Stat.Ann. § 256 (Purdon 1972), which has since been repealed. 42 Pa.Cons.Stat. Ann. § 6301 now governs juvenile matters and defines "child" as an individual who is under the age of 18 years. 42 Pa.Cons.Stat.Ann. § 6302.

concluded that *Kent*, particularly in light of *Gault*, set forth certain principles of constitutional dimension which must be followed in connection with juvenile proceedings. We thus held that the constitutional requirements prescribed by *Kent* included notice of the charges, access to certain records, the right to present evidence and cross-examine witnesses, and a statement of the reasons for the waiver. *Id.* at 842.

The district court here found that *Turner* did not hold that the due process clause requires that a transfer or certification or waiver hearing must always be conducted in a case involving a juvenile; rather, its holding and those of *Kent* and *Gault* mandate that any hearing provided by the state must contain certain procedural safeguards. Because Pennsylvania law does not require a hearing until petitioner's true age appears to the trial court, in the district court's view the trial court's failure to conduct the hearing in this case did not violate the petitioner's constitutional rights.

We have of course arrived at a different conclusion concerning the scope of the trial court's duty under these circumstances to become cognizant of Clark's status as a juvenile. Because we conclude that, under these particular facts, Clark was entitled to a certification hearing, it is axiomatic that the absence of the opportunity to be eligible for the procedural safeguards provided by the Pennsylvania statute represented a deprivation of due process. In our reading of *Kent, Gault,* and *Turner* a duty is imposed on courts to conduct juvenile proceedings which comport with general principles of due process. For the trial court not to have exercised sufficient diligence to inquire into whether a hearing was appropriate deprives a defendant of due process rights.

We further conclude that this denial of due process rises to the level of deprivation of constitutional rights encompassed within *United States v. Tucker*, 404 U.S. at 449, 92 S.Ct. at 592, and mandates resentencing. Two recent Supreme Court cases implicate our decision.

In *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) the sentencing jury considered a New York conviction which the petitioner maintained was constitutionally invalid because he was denied his right to appeal. The questions sought to be raised in the appeal of the New York case involved the use of a coerced confession and the failure to hold a hearing on the voluntariness of the confession outside the presence of the jury. After the Mississippi death sentence was imposed, a New York court overturned the prior conviction on the basis of constitutional infirmity. On appeal of the death sentence to the Supreme Court, the Court decided that consideration of the invalid New York conviction rendered the Mississippi death sentence unlawful.

In *Maleng v. Cook*, 109 S.Ct. at 1927, the habeas petitioner alleged that his sentence was invalid because the court considered a prior conviction which was unconstitutionally obtained because he was mentally incompetent to stand trial. Although the Court's holding in *Maleng* was limited to one of subject matter jurisdiction, the outcome that resentencing under *Tucker* might be necessary if the conviction were ruled invalid was not questioned.

We are thus confident that an extension of *Tucker* to this instance wherein Clark was deprived of due process, a juvenile proceeding affording significant procedural rights is most appropriate. *See Sadler v. Sullivan*, 748 F.2d 820, 824, n. 12 (3d Cir. 1984) (Supreme Court has held that under due process clause, fundamental fairness requires that juveniles receive benefits of essential constitutional provisions, *citing, In Re Gault*, 387 U.S. at 29, 87 S.Ct. at 1444 (notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination); *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond reasonable doubt); *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy)); *see also, Schmidt v. Hewitt*, 573 F.2d 794 (3d Cir.1978) (if transfer to juvenile court confers substantial benefit, transfer hearing constitutionally required, *citing Kent v. United States*, 383 U.S. 541,

86 S.Ct. 1045, 16 L.Ed.2d 270). Indeed, it is compelled.

## IV.

■ It is undisputed that the 1980 sentencing court relied upon the prior convictions of Clark as an adult when imposing the 1980 sentence. Specifically the court stated:

> THE COURT: I also look upon it that he has that proclivity to commit a crime and that he does so with deliberateness and does so when he doesn't jeopardize himself too much, like after his parole is over.
> DEFENSE COUNSEL: Maybe that means—
> THE COURT: He was given a break before, and despite that he did not respond. *Id.* at 13–14.
> THE COURT: ... I will give [Clark] the benefit of the doubt that he was not convicted of rape or attempted rape in the past, that it was felonious restraint. I will give him that, but he's committed a serious crime. He's not free of any criminal conduct, all of which I do consider. *Id.* at 25.

By employing the language "criminal conduct", it is apparent that the sentencing court relied upon the fact that Clark had committed previous offenses as an adult— otherwise the terminology "criminal" would not be utilized. Given this reliance, the matter must be remanded for resentencing on the 1979 conviction without consideration of the prior offenses, the punishment for which was obtained without providing Clark his constitutionally guaranteed rights of due process. We will therefore reverse the district court's order and remand with instruction for the district court to enter an order provisionally granting the writ of habeas corpus if the Court of Common Pleas of Philadelphia County does not resentence Clark within 60 days from the date of the district court order.