

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-2000

# Coss v. Dist Atty Lackawanna

Precedential or Non-Precedential:

Docket 98-7416

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Coss v. Dist Atty Lackawanna" (2000). *2000 Decisions.* Paper 139.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/139

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 29, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7416

EDWARD R. COSS, JR.,
        Appellant

v.

LACKAWANNA COUNTY DISTRICT ATTORNEY;
THE ATTORNEY GENERAL OF THE COMMONWEALTH
OF PENNSYLVANIA

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 94-cv-01481)
District Judge: Honorable Thomas I. Vanaskie

Argued March 1, 1999

Before: STAPLETON, RENDELL and ALDISERT, Circuit  Judges

Re-Argued: Monday, November 8, 1999

Before: BECKER, Chief Judge, SLOVITER, MANSMANN,
GREENBERG, SCIRICA, NYGAARD, ALITO, ROTH,
McKEE, RENDELL, BARRY, ALDISERT and STAPLETON,
Circuit Judges.

(Filed: February 29, 2000)

Daniel I. Siegel, Esq. (argued)
Assistant Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 306
Harrisburg, PA 17101

 ATTORNEY FOR APPELLANT

William P. O' Malley (argued)
Assistant District Attorney
Lackawanna County Courthouse
200 N. Washington Avenue
Scranton, PA 18503

 ATTORNEY FOR APPELLEES

D. Michael Fisher
Attorney General

William H Ryan, Jr.
Executive Deputy Attorney General
Director, Criminal Law Division

Robert A. Graci
Assistant Executive Deputy Attorney
 General
Law and Appeals
Criminal Division

Ronald T. Williamson
Senior Deputy Attorney General
Appeals and Legal Services Section
Criminal Law Division

 ATTORNEYS FOR AMICUS
CURIAE, THE ATTORNEY
GENERAL OF PENNSYLVANIA

OPINION OF THE COURT

ALDISERT, Circuit Judge.

Edward Coss appeals from the denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C.S 2254. He is not challenging the merits of the state conviction for

2

which he is presently incarcerated. Instead, he contends that because a former conviction for which he is no longer incarcerated or under any parole restraint was tainted by a constitutional infirmity, and that conviction was improperly considered when he was sentenced for his second offense, his current term of incarceration violates his constitutional rights.

We must first decide whether the conviction of hisfirst offense was considered by the sentencing judge in the matter for which he is presently incarcerated, thereby vesting subject matter jurisdiction in the District Court for his present petition. If we find such jurisdiction we must then examine his first conviction to determine whether he was denied his Sixth Amendment right to competent counsel. If we agree with this contention then we must decide what remedy is available to him.

I.

The melancholy chronicle of events started with a simple assault and battery that took place on June 25, 1986, in the small community of Dickson City in Lackawanna County, Pennsylvania, when the local police were called to a high school graduation party at the home of Carol Ann Frank, the sister of the then seventeen-year-old Appellant, Edward Coss. At the District Court hearing, testimony was presented that Appellant attended the party along with his brothers, Jimmy and Bobby, Appellant's girlfriend, Sherry Kulick, Carol Ann's roommate, Lisa Frieto, and Lisa's brother, George Frieto. Most of the guests at the party consumed alcohol.1 It seems that Carol Ann's roommate, Lisa Frieto, got into a hair pulling contest with Sherry Kulick, and thereafter the revelers, all of whom had been drinking, apparently picked sides and a grand donnybrook was had by all until Carol Ann, the hostess, threw everyone out of her house.

Undeterred by the great outdoors, the donnybrookers continued their carousing outside until the landlord and
_____

1. Although at his trial Appellant's story differed from the facts we recount here, the District Court clearly credited this version of events.

the neighbors called the police. When the cops arrived with their usual greeting, "Break it up," there apparently was a slight problem in attitude adjustment, and the cops say that Appellant threw a couple of punches at one of them, landing himself in the local lockup. Totally dissatisfied with the accommodations, Appellant proceeded to voice his complaint by destroying a radiator, a sink, a toilet and a light fixture on the ceiling in his cell. For this, he was convicted of simple assault and institutional vandalism and sentenced to six months to a year on each offense. Appellant did his time and was released to society on parole.

Appellant met with his assigned attorney, Rose Ann McGowan, on two occasions before his trial. The District Court made the finding of fact that Appellant gave McGowan the names and addresses of several potential witnesses during their first meeting.2 Counsel gave Appellant no notice of the trial date but contacted him approximately one hour before the trial was to begin, at which point Appellant drove directly to the courthouse, stopping only to pick up his brother Jimmy at school.

Appellant's trial began on October 30, 1986 and lasted two days. At the trial, the officers who arrested Appellant, Officers Adamitis and Wrobel, testified that when they arrived at the scene, individuals began scattering and that

_____

2. Appellant testified at the evidentiary hearing that in the first meeting,
he and McGowan discussed "the whole entire story, how it happened, [and] who was involved." His second andfinal meeting with McGowan prior to his trial occurred after a severance motion, requesting that the charges in connection with the simple assault be severed from those filed for the damage to the juvenile detention center, wasfiled in September 1986. He alleges that he and McGowan also discussed the names of possible witnesses at this meeting. McGowan did not testify what occurred at these meetings. She did testify at the evidentiary hearing that Appellant did not give her the names of any witnesses he wanted her to subpoena, but then admitted that she did not specifically remember Appellant's case and was instead testifying based on her general practice as a public defender.

The court also noted that even if Appellant did not provide the names to McGowan at this time, a cursory review of the police reports would have identified the names and addresses of some of these witnesses.

4

they grabbed Appellant as he was running to his car. They testified that Appellant was screaming vulgarities and smelled of alcohol. They testified that, after being grabbed, Appellant began pushing Officer Wrobel and was then arrested. They also testified that as Officer Adamitis attempted to grab Appellant's brother Bobby, Appellant punched Officer Adamitis in the face. This punch is the basis for Appellant's simple assault conviction. Finally, Officer Wrobel testified that an individual named George also hindered their attempts to arrest Bobby.

The only witnesses to testify on Appellant's behalf were Appellant and Jimmy.3 Their accounts of the incident on June 25, 1986 were completely different from the testimony adduced some years later at the District Court hearing. They denied (1) that there was a party at Carol Ann's house that night and (2) that Appellant had been drinking. They testified (3) that on the night in question, Jimmy and Appellant were in their sister's driveway, along with their brother Bobby, and had been there no more than fifteen minutes when two police officers arrived and began to assault Bobby and Appellant, (4) that Appellant did not curse or punch anyone and (5) that he did not know who the officer was referring to when he stated that an individual named George was at the scene. Jimmy corroborated this story, stating that there was no party at Carol Ann's, that they were only at Carol Ann's house to give her a camera, that he had not been drinking and that Appellant did not hit a police officer.

The charges ultimately presented to the jury were institutional vandalism and criminal mischief, simple assault, resisting arrest and disorderly conduct. The jury convicted Appellant of institutional vandalism, criminal mischief and simple assault.4 Appellant was sentenced on

_____

3. McGowan did not suggest that Jimmy testify. Instead, Appellant, on his own initiative, brought Jimmy to the trial and asked him to testify. McGowan admitted that she did not subpoena, interview or prepare Jimmy.

4. The institutional vandalism and criminal mischief result from Appellant's destruction of the detention cell and are not related to Appellant's interaction with the police outside of Carol Ann's house.

5

January 30, 1987, receiving six months to one year on the simple assault charge and six months to one year on the institutional vandalism and criminal mischief charges. The simple assault sentence ran consecutively to the institutional vandalism and criminal mischief sentence. As stated previously, Appellant has already served his sentence for these convictions.

On August 30, 1989, seven or eight months after Appellant's discharge from Pennsylvania parole supervision, a certain Peter Petrovich was beaten "by a group of five or six men, including appellant."5 Appellant was subsequently arrested and convicted on one count of aggravated assault and battery and one count of simple assault for his part in the group effort to register displeasure on Petrovich's person. Appellant was sentenced to a term of six to twelve years imprisonment on the aggravated assault conviction. Presently, he is serving a sentence based on charges from this 1990 conviction, unrelated to his 1986 convictions. Although he has served the term for the simple assault charge, Appellant urges that his claim is not moot because the assault charge was used to enhance his sentence from the 1990 conviction for which he is still incarcerated.

II.

On September 15, 1994, Appellant filed a pro se petition for writ of habeas corpus pursuant to S 2254. Appellant filed an original and amended petition on November 29, 1995, and a Second Petition for Writ of Habeas Corpus on November 7, 1996. In the petition Appellant claimed that he was denied his Sixth Amendment right to effective assistance of counsel during the proceedings leading up to his 1986 convictions based on, among other things, counsel's failure to subpoena any of the witnesses he requested.6

_____

5. See Commonwealth v. Coss, 695 A.2d 831, 833 (Pa. Super. Ct. 1997).

6. Appellant also alleged that his counsel was ineffective for empaneling two jurors adverse to Appellant's interests, failing to have the institutional vandalism and criminal mischief charges dismissed and failing to file post-trial motions. The District Court dismissed these other
bases of ineffective counsel and, see infra Section V, Appellant does not appeal their dismissal.

6

On April 20, 1998, an evidentiary hearing was held to address Appellant's ineffective assistance of counsel claims. At the hearing, each of the witnesses that Appellant stated he had identified to counsel, namely, Carol Ann, Bobby, Sherry, and George, testified that McGowan did not contact them regarding Edward's trial and that he did not strike any police officer. Bobby, Sherry, and George testified that there was a party and Edward was present, that someone had called the police and that the first thing that the police did upon arrival was approach Edward and place him in the back of one of the police cars. They testified that the police then chased after Bobby, at which point George jumped on the back of one of the officers to try to hinder his attempt to arrest Bobby. Thus, according to these witnesses' testimony, Appellant was in the police car the entire time the police attempted to arrest Bobby. According to the District Court, "McGowan's recollection of the case [at the evidentiary hearing] was somewhat sketchy."[7] She

_____

7. From a review of the evidentiary hearing transcript, we agree with the District Court's characterization of McGowan's memory of this case. At the evidentiary hearing, McGowan testified:

> Q. Ms. McGowan, is your testimony, today, base d on actual recollection of this particular case, the Coss case, or are you testifying, based upon your general practice, as a Public Defender, when you were employed in the Public Defender's Office?
>
> A. It would--it would be in part, yes, and i n part, no. Because certain portions that I've responded to, I have direct recollection. As I said, I have direct recollection--once I looked at the sentencing report, I had direct recollection, exactly, what had transpired. I mean, once Mr. Coss told Judge Cottone, according to the transcript, that he was thinking about an appeal, but they were telling him this, and then I just--I recalled. I do recall distinctly, exactly, that they--the they . . was advising him this way, and he would not listen to me, okay? When we wanted tofile the Post-trial Motions on that, he did not want them. . . . That is direct recollection. Now, the other stuff may be general.
>
> . . . .
>
> Q. Ms. McGowan, what I'm asking you about is, do you, specifically, remember having this conversation with Eddie Coss about these witnesses or is your testimony that this is how you normally conduct yourself?

7

conceded during the hearing that she did not investigate the events surrounding Coss' arrest, electing not to dispatch her investigator to interview any of the witnesses at issue, and defended her actions by stating that"Coss must have told her not to subpoena them." Dist. Ct. Op. at 16 (June 10, 1998).

Following the hearing, the District Court denied Appellant's ineffective assistance of counsel claims. The court held that, although McGowan's failure to subpoena these witnesses "fell below an objective standard of reasonableness," Appellant failed to prove that he was prejudiced by McGowan's failure because the verdict would not have been different, given the inconsistency in the accounts of Appellant and his brother on the one hand, and the witnesses and the police on the other. Appellant appeals this decision of the District Court, arguing on appeal that the District Court erred in its application of the prejudice prong of the ineffective assistance of counsel test as stated in Strickland v. Washington, 466 U.S. 668 (1984).

III.

Our first inquiry is whether the sentencing court at the 1990 conviction took into consideration the 1986 conviction. The presentence report of the Lackawanna Adult Probation Office indicated that Appellant had been convicted on January 30, 1987 of Institutional Vandalism, Criminal Mischief and Simple Assault and was sentenced "[o]n the charge of Simple Assault 6 months to 1 years plus costs, consecutive to the Institutional Vandalism sentence." Pl.'s Ex. 5 at 5. On March 26, 1996, Appellant's counsel raised the question whether Appellant's 1986 convictions

_____

A. No, no. No, no, no, it wouldn't be. I would  have asked him what about these people, what about these, what about these? You know, what were they doing there or how are they related to this?

The questioning continued with McGowan answering the questions regarding her failure to subpoena the witnesses in the form of what she "would have" done or what Coss "must have" said, as distinguished from stating what she "did" or what Coss "said."

8

should count as one misdemeanor, rather than two. Pl.'s Ex. 2 at 5. A Mr. Mecca, ostensibly from the probation office, commented:

> To state that when the defendant committed a simple assault in Dickson City was at that time petitioned, charged, placed in juvenile detention, and the following day in Scranton, Pennsylvania, decided or was charged with institutional vandalism, destroying the cell he was in, to say that is one and the same act as a simple assault, which was followed by hours, if not a day of no criminal activity, to say that is one under the guidelines is an error, Judge."

Id. at 9.

At a continuation of the hearing the next day the judge ruled that he "will view these as being one transaction, one incident, one conviction, rather than two. Therefore, I will be viewing the defendant with a prior record score of two rather than three." Pl.'s Ex. 3 at 5. On April 28, 1993, the judge stated that in determining the sentence "we've taken into consideration your presentence investigation, the report . . . [and] your prior record . . . ." Pl.'s Ex. 1 at 6.

We are satisfied that the sentencing judge for the 1990 conviction took into consideration Appellant's simple assault conviction stemming from the events of June 25, 1986.

IV.

We must now decide whether the District Court had subject matter jurisdiction over this habeas petition. Section 2254 confers jurisdiction on United States District Courts to entertain petitions for habeas corpus relief only from persons who are "in custody" in violation of the Constitution or laws or treaties of the United States. The Supreme Court has interpreted S 2254 as mandating that the petitioner be "in custody" pursuant to the conviction or sentence he seeks to attack at the time his petition is filed. See Carafas v. LaVallee, 391 U.S. 234 (1968). A habeas petitioner does not remain "in custody" under a conviction "after the sentence imposed for it has fully expired, merely

9

because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." Maleng v. Cook, 490 U.S. 488, 492 (1989) (per curiam). A petitioner does, however, satisfy the "in custody" requirement for federal habeas jurisdiction when he asserts a challenge to a sentence he is currently serving that has been enhanced by the allegedly invalid prior conviction. Id. at 493. Moreover, in United States v. Tucker, 404 U.S. 443 (1972), the Court held that a prisoner could attack in a federal habeas proceeding an allegedly unconstitutional conviction, even if he has served in entirety the sentence resulting from the conviction, if that conviction had an effect on a present sentence. See also Young v. Vaughn, 83 F.3d 72, 78 (3d Cir. 1996) (holding that "a prisoner may attack his current sentence by a habeas challenge to the constitutionality of an expired conviction if that conviction was used to enhance his current sentence").

Although Appellant has already served the sentence resulting from the allegedly unconstitutional 1986 convictions and is currently serving a sentence for an unrelated conviction that occurred in 1990, he contends that the sentence from his 1990 conviction was adversely affected by the 1986 simple assault conviction. We have concluded that the sentencing judge did, in fact, refer to Appellant's 1986 conviction for assaulting a police officer in sentencing him for his 1990 conviction. Appellant is thus attacking his prior conviction in an attempt to have his current sentence, which relied on his prior conviction, reevaluated. The District Court therefore appropriately construed Appellant's petition as challenging the 1990 conviction rather than his expired conviction, see Young v. Vaughn, 83 F.3d at 75, and properly concluded that it had jurisdiction over his S 2254 petition. Id. We have appellate jurisdiction pursuant to 28 U.S.C. SS 1291 and 2253.

V.

Absent a valid excuse, a habeas petitioner must present all federal claims to the state courts. 28 U.S.C.S 2254(b); Rose v. Lundy, 455 U.S. 509 (1982). "The exhaustion requirement ensures that state courts have the first

10

opportunity to review federal constitutional challenges to state convictions and preserves the role of the state courts in protecting federally guaranteed rights." Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1230 (3d Cir. 1992) (citing O'Halloran v. Ryan, 835 F.2d 506, 509 (3d Cir. 1987)). Of course, "[i]nexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable" and exhaustion will be excused. Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir. 1986).

Prior to filing his S 2254 petition, Appellant had a petition challenging his 1986 conviction pending under Pennsylvania's Post Conviction Hearing Act (PCHA), 42 Pa. Cons. Stat. S 9541, et seq. (amended 1988), for approximately seven years without any activity. Under these circumstances, the District Court excused the exhaustion requirement and we find no fault with that decision. Appellant has not, however, presented to the Pennsylvania state courts his claim that the invalid 1986 conviction was used to enhance his subsequent conviction in 1990, the conviction being challenged by the underlying habeas petition. Nonetheless, we conclude that this is not a situation in which the District Court was faced with a mixed petition necessitating a dismissal under Rose v. Lundy. As was made clear by the Pennsylvania Supreme Court in Commonwealth v. Ahlborn, 548 Pa. 544, 699 A.2d 718 (1997), collateral relief is not available under either the Post Conviction Hearing Act or under the common law remedies of state habeas corpus or coram nobis for a petitioner who is not currently serving a sentence of imprisonment for the conviction he wishes to challenge, even if petitioner contends that collateral consequences stem from that conviction. Accordingly, insofar as state law clearly forecloses state court review of Appellant's "collateral consequence" claim, the District Court properly excused exhaustion and entertained the claim on its merit. 8 See, e.g., Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir.

_____

8. We view Commonwealth v. Ahlborn not as erecting a "procedural bar," but as a statement that there is no available state remedy for the claim that the present sentence was incorrectly enhanced by an invalid prior conviction."

11

1986) (citing Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (per curiam)).

VI.

Because Appellant submitted filings to the District Court both before and after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we think it necessary to briefly discuss the law governing this action. We conclude that the amendments brought about by AEDPA do not apply to this case as Appellant's original petition and amendment were both filed prior to AEDPA's effective date. See Lindh v. Murphy, 521 U.S. 320 (1997); McCandless v. Vaughn, 172 F.3d 255 (3d Cir. 1999); United States v. Skandier, 125 F.3d 178 (3d Cir. 1997). Though Appellant did file a "Second Petition" in November of 1996, i.e., after the enactment of AEDPA, that petition did not add new claims, but merely waived, as was permitted by the District Court's order of October 23, 1996, those claims presented in his original petition that were determined by the District Court to be unexhausted. See Rose , 455 U.S. at 510 (petitioner may amend his petition to delete unexhausted claims); McMahon v. Fulcomer, 821 F.2d 934, 941 (3d Cir. 1987) (same). In fairness, we view Appellant's "Second Petition" filed after AEDPA as tantamount to a further amendment or clarification to his initial petition, filed at the direction of the District Court, which merely expressed Appellant's intention to proceed with his exhausted claims. Therefore, we consider all the claims raised as having been asserted in a petition filed prior to AEDPA's enactment date. See also United States v. Duffus, 174 F.3d 333, 336-337 (3d Cir. 1999) (discussing, inter alia, the "relation back" provision of Rule 15(c), Federal Rules of Civil Procedure and its application to clarifying amendments to habeas petitions). Accordingly, pre-AEDPA requirements govern. Appellant was obligated to obtain a certificate of probable cause in order to appeal from the District Court's judgment dismissing his habeas corpus petition.

The pre-AEDPA certificate of probable cause did not require specification of issues and placed the entire case before the court of appeals. See Ramsey v. Bowersox, 149

12

F.3d 749, 759 (8th Cir. 1998); Herrera v. United States, 96 F.3d 1010, 1012 (7th Cir. 1996); see also United States ex rel. Hickey v. Jeffes, 571 F.2d 762, 765-766 (3d Cir. 1978). By contrast, the post-AEDPA certificate of appealability requires specification as to which issues satisfy the standard set forth in 28 U.S.C. S 2253(c)(2), i.e., those issues for which the applicant has made a substantial showing of the denial of a constitutional right. In the instant case, rather than granting Appellant a certificate of probable cause to appeal, the District Court granted Appellant a certificate of appealability limited to his claim that counsel rendered constitutionally ineffective assistance by failing to subpoena witnesses on the simple assault charge. Under pre-AEDPA law we determined that it is inappropriate for a District Court to prescribe the issues or issue which may be considered in support of or in opposition to a judgment and that Appellant is free to choose which claims to assert on appeal. Hickey , 571 F.2d at 766. Because Appellant, through his attorney, limited his request for a certificate on appeal to the one issue he believed to be of "arguable merit," that is, the ineffectiveness of counsel claim at issue, we see no reason to extend our review beyond the merits of that claim. Moreover, given our disposition of the appeal, we believe that an expanded review would make little difference.

VII.

We now reach the merits of Appellant's Sixth Amendment claim that he was denied effective assistance of counsel. Because his contention involves the legal component of an ineffective assistance of counsel claim, we exercise plenary review. Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998).

To obtain relief based on an ineffective assistance of counsel claim, a petitioner must not only show that his counsel's performance was objectively unreasonable, but also that it prejudiced his case. Strickland v. Washington, 466 U.S. at 692. The District Court determined that his counsel's failure to subpoena the witnesses at issue was

13

objectively unreasonable, but denied relief because Appellant had failed to demonstrate prejudice.9

To prove prejudice under the second prong of the Strickland test, a defendant must "establish a reasonable probability--one sufficient to undermine our confidence in the outcome--that the jury's verdict would have been different if not for counsel's errors." United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989). The District Court reached its conclusion that Appellant had failed to demonstrate prejudice because the witnesses who testified at the evidentiary hearing painted a completely different picture of the incident leading to Appellant's arrest from that told by Appellant and his brother, Jimmy, at trial. The evidentiary hearing testimony made clear that on the night of the incident Appellant had been drinking at a party that had to be broken up by the police. This version of events is a far cry from Appellant's trial testimony of a calm, quiet visit by him and his brother sabotaged by two rogue police officers. Assuming that Appellant still would have testified and would have testified in the way that he did, the District Court reasoned that the failure to call these witnesses was not prejudicial to Appellant. It reasoned that their testimony, if offered, would only have suggested to the jury that Appellant was lying on the witness stand and that Appellant was drunk and excitable during the incident. Because this case turned on a credibility determination between Appellant and the officers, the District Court reasoned that Appellant could not have been prejudiced by counsel's failure to call witnesses who only would have contradicted Appellant's version of the facts, destroying his credibility with the jury.10 The District Court thus

_____

9. We are not asked to review the issue of the reasonableness of counsel's actions as justifiable or strategic decisions. Appellant's attorney claimed no tactical merit to her failures except to say that she must have done what Appellant wanted in not subpoenaing witnesses; nor does the Commonwealth contest the District Court's finding that her conduct "fell below objective standards of reasonableness."
10. The District Court also considered that Carol Ann and Bobby's testimony would have been suspect since they are Coss' siblings, that Sherry's testimony would have been suspect since she was Coss' girlfriend, and that George Frieto's testimony, while seemingly beneficial to Appellant in that he testified that it was he who attacked the officer, is also not inconsistent with the officer's testimony that an individual named George, in addition to Appellant, tried to hinder Bobby's arrest.

14

concluded that the outcome of the trial would have been no different, that is, Appellant still would have been found guilty of assaulting the officer, absent counsel's failure to summon the other witnesses.

We disagree with the District Court. Although it is unlikely that a court can determine with certainty the result of the proceedings absent counsel's failure, we must examine the "breadth of the evidence" and determine whether the case would have come out the way that it did if the witnesses had been present. United States v. Kauffman, 109 F.3d 186, 191 (3d Cir. 1997). Having examined the evidence in this case, including the evidentiary hearing transcript, we conclude that a reasonable probability exists that had counsel subpoenaed the witnesses, Appellant would not have been found guilty of assaulting the officer.

As a result of counsel's failure to conduct an investigation into the events surrounding Appellant's arrest, only Appellant and his younger brother Jimmy testified in his defense. There can be little doubt that Appellant and Jimmy decided to try to conceal the fact that they had been drinking that evening because they were both underage. Regardless of Appellant's motivation to lie about the context of the incident provoking his arrest, however, both he and Jimmy testified that Appellant did not assault a police officer. At the evidentiary hearing held to investigate Appellant's ineffective counsel claims, Carol Ann, Bobby, Sherry and George all testified that there was a party at Carol Ann's house, that the people at the party were consuming alcohol, that a fight broke out, and that the police came to break it up. Most important, they all testified consistently that Appellant did not punch a police officer. Bobby, Sherry and George testified consistently that it was George who jumped on a police officer's back when the officer assaulted Bobby. Finally, they testified consistently that, at the time the officers arrested Bobby, which according to the officers is the time that Appellant punched the officer, Appellant was sitting in the police car with the door shut.11 Thus, although the witnesses' rendition of what

_____

11. It is important to note that all witnesses at the evidentiary hearing were sequestered, thus bolstering the credibility of these witnesses' convincingly consistent versions of the critical events.

15

happened on the night in question conflicts in large part with Appellant's version at his trial, all accounts of the evening are consistent in their most significant respect-- Appellant did not commit the assault alleged.

We believe that the District Court employed too narrow an approach in analyzing Appellant's claim of prejudice. When it reached the prejudice prong of the Strickland test, the District Court stated that " `[p]rejudice' to a defendant from the failure to call witnesses should be assessed in the context of the other testimony presented by the defense witnesses." Dist. Ct. Op. at 18 (June 10, 1998) (emphasis added). The District Court phrased as the critical question: would the result of the trial have been any different if, instead of only Appellant and Jimmy testifying, the other four witnesses had also testified in Coss' defense? In so framing this question, the court assumed not only that Appellant would still have testified on his own behalf, but also that he would have told the same tale that he did at trial.

Strickland teaches that a court consider"the totality of the evidence before the judge or jury" in determining prejudice. 466 U.S. at 695. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." Id. at 695-696.

Here, counsel's error had a pervasive effect, altering the entire evidentiary picture at trial. The testimony of the witnesses not presented should not be considered as merely a hypothetical supplement to the evidence actually offered at trial, with the remainder of the trial presumed to unfold as it actually did. Considering the totality of the evidence, we believe that, had counsel subpoenaed the witnesses and heard from them their version of the events (including that, although the police were correct in their allegations, it was George, not Appellant, who assaulted the officer), she would not have presented at trial all versions of the evening's events, including Coss' clearly fictional rendition. When we assume the reasonably probable outcome without counsel's ineffectiveness, we must also assume a scenario that envisions counsel's acting effectively.12  The District Court

_____

12. As pointed out by Appellant, if counsel had put both Appellant and the witnesses at issue on the stand and presented an inconsistent theory

16

should have realized and considered the different course that the trial would probably have taken had counsel acted in an objectively reasonable manner by subpoenaing and interviewing these witnesses, and then presenting a defense consistent with their testimony. Had counsel interviewed these witnesses, we believe that there is a reasonable probability that Appellant would not have testified at all, or that he would have testified consistently with the other witnesses, thus avoiding the contradictory testimony that troubled the District Court.

As the Court has emphasized, the prejudice inquiry also involves concepts of reliability and fairness. See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). We believe that counsel's failure to subpoena these witnesses was prejudicial. They would have testified as to Appellant's innocence to the simple assault charge. This strongly suggests that the outcome of the trial would not have been the same. In light of the quantity of exculpatory evidence that was available yet not presented to the jury, we believe counsel's conduct made the result of the trial fundamentally unfair and unreliable. Appellant has thus met his burden under Strickland to prove that he was prejudiced by his counsel's failure to subpoena the witnesses at issue.

We, therefore, conclude that the District Court erred in denying the petition for a writ of habeas corpus.

VIII.

Finally, we must address what relief is appropriate. It has been suggested that, inasmuch as Appellant has already served his sentence under the tainted proceeding, the only relief available is to direct the Commonwealth to re-

_____

of defense, that in itself could constitute ineffective assistance. See Bland
v. California Dep't of Corrections, 20 F.3d 1469, 1479 (9th Cir. 1994). Of course, counsel cannot rely on Bland to say that it was proper for her to not offer the witnesses' testimony in her attempt to present a consistent theory of defense, because she did not interview these witnesses to ascertain any inconsistencies.

17

sentence Appellant for the 1990 conviction without any reference to the previous assault and battery conviction.

The normal relief that we grant in habeas corpus is to order that the habeas petitioner be freed, subject to the right of society to correct in a timely manner the constitutional error through a new state proceeding. It cannot be controverted that had Appellant filed his habeas petition during the period he was incarcerated or on parole from the first conviction and we decided that he had been deprived of his Sixth Amendment right to counsel, we would have accorded Pennsylvania the option of releasing him or correcting the infirmity by means of a new trial or other proceeding. See, e.g., Henderson v. Frank, 155 F.3d 159 (3d Cir. 1998); Barry v. Brower, 864 F.2d 294 (3d Cir. 1988).

Here, however, we cannot "free" Appellant because he has already, in the vernacular, "done the crime and done the time." We are thus faced with the very nice question: Should we give society, here, the Commonwealth of Pennsylvania, the right to cure the Sixth Amendment constitutional defect or should we give the Appellant a free ride and have his second sentence declared invalid simply because he is a recidivist? In Henderson, we explained that "federal habeas power is limited, first, to a determination of whether there has been an improper detention by virtue of the state court judgment; and second, if we find such an illegal detention, to ordering the immediate release of the prisoner, conditioned on the state's opportunity to correct constitutional errors that we conclude occurred in the initial proceedings." 155 F.3d at 168.

Appellant contends that where a previously infirm conviction has been used to enhance the sentence in a subsequent criminal case, the only remedy available to a federal court is to require the state to re-sentence under the second conviction and deny it the opportunity to correct the constitutional infirmity in the previous case. He relies on a series of cases which we now examine.

Appellant's primary reliance is on the teachings of United States v. Tucker, 404 U.S. 443 (1972). We do not deem this to be an appropriate analogue to this case or any other

18

federal habeas case brought under S 2254. By caption and by content United States v. Tucker was not a habeas corpus case brought under S 2254 based on a state conviction. There the defendant was seeking post conviction relief from a federal conviction pursuant to 28 U.S.C.S 2255. This is a distinction with a fundamental difference. The Court could not possibly condition relief on affording any state the opportunity to retry the defendant because no state officials were parties to the lawsuit. No state wardens, custodians or state officers were respondents or defendants as in the case of a S 2254 petition. In bringing his action, Tucker was attacking a federal sentence imposed by the District Court for the Northern District of California that had been enhanced on the basis of invalid state court convictions from Florida and Louisiana. Because the Court had no state officers as petitioners or respondents before it, the Court lacked power or authority to give the option to a state court in Florida or Louisiana to retry the defendant. To prevent the "erosion of the Gideon principle" that the right to effective assistance of counsel is fundamental, the Court had no alternative other than to order that the defendant be re-sentenced on the federal conviction without reference to the invalid state court convictions.13  In contrast, in every habeas petition brought under S 2254, an officer of the state or a political subdivision thereof is always the respondent. The teachings of Tucker reflect one exception to the general rule of permitting the state to correct the constitutional infirmity in a subsequent sentence enhancement case--where the federal court lacks the authority to afford the state the opportunity to correct the constitutional infirmity because no state officer is a party to the litigation. We now turn to other exceptions reflected in the cases.

_____

13. The Court's discussion is specifically targeted to a S 2255 case:

> [T]he real question here is not whether the results of the Florida and
> Louisiana proceedings might have been different if the respondent
> had had counsel, but whether the sentence in the 1953 federal case
> might have been different if the sentencing judge had known that at
> least two of the respondent's previous convictions had been
> unconstitutionally obtained.

404 U.S. at 448 (emphasis added).

19

This court has held that where a return to the state for additional proceedings "would be virtually impossible" under the circumstances, the federal court in aS 2254 case may simply order re-sentencing on the subsequent conviction without affording the state an opportunity to cure the previous constitutionally infirm conviction. See Clark v. Commonwealth, 892 F.2d 1142 (3d Cir. 1989). Clark was a deprivation of due process case lodged against a prior conviction that served to enhance the sentence for a subsequent offense. The gravamen of the petitioner's complaint was that in 1974, when Clark was 17 years of age, he was denied a juvenile court hearing to determine whether he should have been tried as a juvenile or as an adult. We determined that this denial constituted a due process violation, reversed the district court and granted relief, and, without elaboration at this point in the opinion, ordered that "the matter must be remanded for re-sentencing on the 1979 conviction without consideration of the prior offenses." 892 F.2d at 1153. Nevertheless, earlier in our opinion, recognizing that at the time we heard this appeal in 1989, the petitioner was 31 years old, there is a statement of reasons supporting our determination of the proper relief. Although set forth in our discussion of a portion of the Pennsylvania Post-Conviction Hearing Act, we commented that "both the delay, 16 years since the alleged due process violation, and the prejudice . . . are present. . . . Given the death of the trial judge and the destruction of the relevant stenographic notes, to now defend against this issue in a collateral proceeding would be virtually impossible. . . . To return to the Pennsylvania courts would thus be futile." 892 F.2d at 1148-1149. Moreover, before us and in the district court the Commonwealth gave no indication that it wished to pursue further proceedings in the constitutionally infirm 1974 prosecution. The only relief possible was to order a re-sentencing on the subsequent conviction without enhancement. Thus, Clark reflects a second exception to the general rule permitting the state to exercise the option of additional proceedings.

In addition, a defendant could not be retried by the state where the trial never should have been held because of a serious constitutional violation such as denial of a right to

20

a speedy trial. Barker v. Wingo, 407 U.S. 514, 522 (1972). Barker teaches that:

> [T]he [speedy trial] right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy .

Id. (emphasis added). The Court also teaches that dismissal is the only remedy for violation of the double jeopardy principle. In Benton v. Maryland, 395 U.S. 784, 795–796 (1969), the Court remarked:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Id. (quoting Green v. United States, 355 U.S. 184, 187–188 (1957)).

An example of a double jeopardy problem would arise if a petitioner were successful in a case like Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson , the petitioner claimed in a habeas corpus proceeding that he had been convicted on constitutionally inadequate evidence. The Court held that the petition would be granted if"upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. Had the petition been granted in that case, the state could not retry the petitioner because it would violate his right against double jeopardy. See also Burks v. United States, 437 U.S. 1, 11 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials.").

Another situation where a defendant cannot be retried is when a writ is granted because the state denied the petitioner due process of law by suppressing or destroying exculpatory evidence that no longer can be reconstructed. See Brady v. Maryland, 373 U.S. 83 (1963). If the prosecution were to not only withhold exculpatory evidence in violation of Brady, but also destroy it, a defendant could never receive a fair trial. The defendant could never produce the totality of the evidence in his or her defense because of the constitutional violations. In this instance, the only constitutional remedy would be unconditional granting of the writ.

There is no parallel between the case at bar and those cases where courts have determined that states should not be entitled to retry the petitioner.

* * * * *

Therefore, we will condition the entry of the writ by extending to the Commonwealth the option of conducting a new trial. If this new trial produces a verdict different from the prior verdict, the state must re-sentence Appellant to account for any enhancement due to this guilty verdict.14
_____

14. Even if the Commonwealth elects to retry Coss, he will have to be re-sentenced regardless of the outcome. Even if a valid conviction is forthcoming on the earlier charge, nothing changes the fact that his current sentence was enhanced by an unconstitutional violation. A vacated conviction is not the same conviction as one that occurs after vacatur. Thus, in the event of a valid conviction, he would still have to be re-sentenced on the subsequent offense in light of new proceedings on the earlier offense.

We hold only that a retrial on the earlier offense would not violate the Federal Constitution and that comity requires us to afford the Commonwealth the opportunity to cure the original constitutional defect. We express no opinion on whether such a retrial would be consistent with Pennsylvania law. Moreover, if there is a conviction on retrial of the earlier offense, the Double Jeopardy Clause requires that the time he has already served on the original 1990 sentence be credited against the new sentence. North Carolina v. Pearce, 395 U.S. 711, 718-719 (1969) ("If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, these years can and must be returned--by subtracting them from whatever sentence is imposed."), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989).

22

The Commonwealth also has the option of not affording a new trial and merely proceeding into re-sentencing on the 1990 conviction.

For the reasons stated above, we will reverse the judgment of the District Court that denied the petition for a writ of habeas corpus and remand with instructions that it issue a writ of habeas corpus conditioned on the foregoing options available to the Commonwealth.

23

NYGAARD, Circuit Judge, dissenting.

I agree with much of the majority's opinion. Indeed, I agree that Coss was denied effective assistance of counsel during his 1986 trial for simple assault, and that his subsequent conviction on that charge is constitutionally infirm as a result. I part company with the majority over the question of whether the challenged sentence "might have been different if the sentencing judge had known that at least [some] of the respondent's prior convictions had been unconstitutionally obtained." United States v. Tucker, 404 U.S. 443, 448 (1972). On this record, I have no doubt that the sentencing judge would have imposed exactly the same sentence had he known Coss' 1986 conviction for simple assault was constitutionally infirm. Therefore, I respectfully dissent from that portion of the majority's opinion holding that Coss is entitled to habeas relief. Because I conclude that no relief is due, I express no view on the propriety of the majority's remedy.

This is at least the third time that Coss has asked a court to review the sentence arising from his 1990 conviction for simple and aggravated assault. The first time, the Pennsylvania Superior Court "vacated the sentence because it was not clear that the presentence report was accurate" and remanded the case for resentencing. See Commonwealth v. Coss, 695 A.2d 831, 833 (Pa. Super. 1997) (mem) (citing Commonwealth v. Coss, 674 A.2d 313 (Pa. Super. 1996)).

At his resentencing hearing, Coss challenged both the gravity assigned to his aggravated assault conviction, and its enhancement based on his criminal record. See id. The sentencing court agreed that his three misdemeanor convictions in 1986 all arose from the same action and, accordingly, reduced his prior record score from 3 to 2. See id. The effect of the adjustment was to eliminate the 1986 convictions from Coss' prior record score entirely. The post-adjustment score of 2 was based solely on Coss' 1985 adjudication of delinquency. See id. at 835. Despite making the adjustment, however, the court resentenced Coss to the same six-to-twelve-year sentence it had originally imposed. That sentence remained within the standard range provided by the state sentencing guidelines even after the prior

24

record adjustment, and the court found no reason for a downward departure. See id. at 833–34.

In resentencing Coss to the same sentence it had originally imposed, the sentencing court considered a number of different factors. In explaining the sentence for the record, the court informed Coss that:

> in passing sentence on you I've taken into consideration the presentence investigation report, and I've deleted therefrom all the remarks through the matter brought to my attention by [defense counsel] and I will not consider those matters.
>
> I've taken into consideration the statements by [defense counsel] and the seriousness and nature of the crime involved here, the well being and protection of the people who live in our community, your prior criminal record, the possibility of your rehabilitation, and the testimony that I've heard. I was the trial judge, and I take into consideration the testimony from the trial.

Sentencing Transcript of 03/27/1996 at 4–5, reproduced in Supp. App. at 243–44.

I would not deny Coss the relief he seeks merely because his prior criminal record was only one of many factors on which the sentencing court based its decision. Instead, I would deny relief because his 1986 simple assault conviction is such a minor component of that record that there is no question that the sentencing court, given its concerns, would have imposed exactly the same sentence in any event.

Given the nature of Coss' appeal, it is certainly understandable that the focus of attention has been on the challenged 1986 conviction for simple assault. But I take a broader view and include the extensive criminal record that Coss has managed to compile. It starts with a 1980 arrest, when Coss was 11 years old, for recklessly endangering another person. See Presentence Investigation Report at 4, reproduced in Supp. App. at 258. Thereafter, Coss was adjudicated delinquent on five separate occasions (when he was 12, 13, 15 and 16 years old) for, respectively: (1) theft

25

and receiving stolen property; (2) disorderly conduct and resisting arrest; (3) simple assault; (4) yet another simple assault; and (5) burglary. See id.

As an adult, Coss has been convicted on the aggravated and simple assault charges for which he is currently imprisoned. In separate incidents, he has pleaded guilty to disorderly conduct after being charged with that offense, as well as with hindering apprehension, in 1989. He also pleaded guilty to possession of a controlled substance in 1992 after being charged with that offense, and with reckless endangerment in 1991.

In addition, Coss' record at the time of sentencing included:[1]

(1) a 1986 arrest for making terroristic threats;

(2) a 1988 arrest for aggravated assault and simple assault;

(3) a 1988 arrest for delivery of a controlled substance (heroin);

(4) a 1989 arrest for aggravated assault, simple assault, recklessly endangering another person and disorderly conduct;

(5) another 1989 arrest for aggravated and simple assault;

(6) yet another 1989 arrest for simple assault as well as for making terroristic threats;

(7) a 1990 arrest for simple assault and retail theft; and

(8) a 1990 arrest for retail theft and criminal conspiracy;

_____

1. Under Pennsylvania law, a sentencing court may consider prior arrests in an offender's record, that did not result in convictions, "so long as the court realizes that the defendant had not been convicted on those prior charges," and does not give them "undue weight." See Commonwealth v. Craft, 450 A.2d 1021, 1024 (Pa. Super. 1982) (citing Commonwealth v. Straw, 361 A.2d 427 (Pa. Super. 1976); Commonwealth v. Tisdale, 334 A.2d 722 (Pa. Super. 1975); Commonwealth v. Shoemaker, 313 A.2d 342 (Pa. Super. 1973), aff 'd 341 A.2d 111 (1975)); see also Commonwealth v. Allen, 489 A.2d 906, 912 n.4 (Pa. Super. 1985).

See id. at 5-7.

The 1996 sentencing court was intimately familiar with Coss, with the charges on which he had been convicted, and with his criminal record. It had the opportunity to hear the evidence against Coss at trial. It had the opportunity to hear from Coss at sentencing. See Sentencing Transcript of 04/28/1993 at 4-5, reproduced in Supp. App. at 199-200. Most importantly, it had the relatively rare opportunity to reconsider its decision when the original sentence was vacated on appeal. Yet, the court chose to impose the same sentence it had initially imposed, finding "no reason" for a reduction. See Sentencing Transcript of 03/27/1996 at 26, reproduced in Supp. App. at 244.

In finding no reason to reduce Coss' sentence, the court found it "indicative from [Coss'] actions" that he would "continue to break the law." Id. Given the extensive and often violent nature of Coss' criminal record, I find it impossible to conclude that the sentencing court's concerns for "the well being of the people who live in our community" and the "possibility for [Coss'] rehabilitation" would have been allayed by the omission of his 1986 conviction for simple assault from his criminal record. Because I am certain that the sentencing court would not have sentenced Coss differently had it known that one conviction was constitutionally infirm, I respectfully dissent from the majority's conclusion to the contrary.

Judge Roth joins in this dissenting opinion.

27

RENDELL, Circuit Judge, concurring in part and dissenting in part:

I concur with the reasoning and result of the majority opinion in all respects except its discussion of the relief to be afforded to Eddie Coss as set forth at Part VIII. I believe that Part VIII of the majority opinion proceeds from an erroneous premise about a "general rule" to be followed in habeas cases challenging a sentence enhancement, ante at 19, 20, and then, as a result, asks the wrong question about what relief is appropriate in this particular case.[1] I conclude that: (1) a "general rule" favoring retrial does not exist in subsequent sentence enhancement cases; (2) for reasons of prudence and comity, the better alternative in this case is to condition our writ only on the Commonwealth court's resentencing Coss on his 1990 conviction; and (3) such a writ would not provide an untoward "windfall" to the petitioner.

The majority's discussion of remedy begins with the unobjectionable proposition that "[t]he normal relief that we grant in habeas corpus is to order that the habeas petitioner be freed, subject to the right of society to correct in a timely manner the constitutional error through a new state proceeding." Ante at 18. I take no issue with this statement, nor do I disagree with the majority's assertion that, in S 2254 cases, there is a "general rule of permitting the state to correct the constitutional infirmity," and that this rule extends to subsequent sentence enhancement cases as well as other habeas cases. Ante at 19.

However, the majority then makes an unarticulated leap of logic that I cannot accept, transforming its general rule that the state should be permitted to correct its constitutional error into a "general rule" that the state should be permitted retrial as the method for this correction whenever possible. This latter rule simply does not exist. It is true, as the majority observes, that in an ordinary

_____

1. This "nice" question, see ante at 18, is: "Should we give society, here, the Commonwealth of Pennsylvania, the right to cure the Sixth Amendment constitutional defect or should we give the Appellant a free ride and have his second sentence declared invalid simply because he is a recidivist?"

28

habeas case -- one in which the confinement that gives rise to the S 2254 petition stems directly from the conviction that is alleged to be deficient -- the writ normally granted is a conditional writ allowing the state to retry the defendant. This is because, in garden-variety habeas cases, the "constitutional infirmity" being complained of lies in the conviction being challenged. In contrast, in a situation involving an improperly enhanced sentence, it is the latter sentence itself that is the basis for our jurisdiction and that is the "constitutional infirmity" complained of. See Maleng v. Cook, 490 U.S. 488, 490 (1989) (per curiam) (stating that a habeas petitioner in an enhancement case is not "in custody" on the earlier expired sentence, but rather is "in custody" only on the subsequent enhanced sentence); Young v. Vaughn, 83 F.3d 72, 75-76 (3d Cir. 1996) (stating that we have jurisdiction in a Maleng-type case only because the habeas petition is construed as challenging the subsequent enhanced sentence rather than the underlying conviction, and pointing out that "the purpose of [petitioner's] petition is presumably to terminate the sentence he is presently serving"). Accordingly, while I agree that we should "permit the state to correct the constitutional infirmity," I believe that this goal is to be accomplished by conditioning our writ on the state's resentencing Coss in a manner consistent with the knowledge that his 1986 conviction was obtained without the effective assistance of counsel. Such a writ, which would instruct the state to release Coss unless it resentences him in a fashion that accords with our determination that the use of the 1986 conviction as a sentencing enhancer was improper and rendered his sentence unconstitutional, is an exact parallel to the conditional writ in an ordinary habeas case, which instructs the state to release the petitioner unless it repeats the offending process in a way that accords with the reviewing court's determination that some aspect of that process was constitutionally infirm.

The majority asserts that cases such as Tucker[2] and Clark[3]

_____

2. United States v. Tucker, 404 U.S. 443 (1972).

3. Clark v. Pennsylvania, 892 F.2d 1142 (3d Cir. 1989).

29

are exceptions to a general rule that the state should be permitted retrial whenever possible, even in the sentencing enhancement scenario. However, the majority has not been able to point to one enhancement case in which a habeas court has ordered retrial on the initial charge, or even suggested retrial as a potential form of relief. Nowhere in the case law is there support for the proposition that Tucker was conceived as an exception to a general rule of retrial applicable in sentence enhancement cases.4  Although it is true that Tucker, unlike the instant case, addresses the use of earlier state convictions as invalid enhancements of a federal sentence, there is no evidence either in Tucker itself or in subsequent cases citing Tucker that Tucker is limited to cases arising from S 2255 petitions. The majority quotes an excerpt from Tucker as support for the theory that Tucker is so limited, see ante at 19 n.13. However, the majority has omitted the lines immediately preceding that excerpt, which clearly point in the opposite direction. The full content of the relevant passage is instructive:

> We need not speculate about whether the outcome of the respondent's 1938 and 1946 prosecutions would necessarily have been different if he had had the help of a lawyer. Such speculation is not only fruitless, but quite beside the point. For the real question here is not whether the results of the Florida and Louisiana proceedings might have been different if the respondent had had counsel, but whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.

_____

4. Cases cited by the majority such as Henderson v. Frank, 155 F.3d 159, 162 (3d Cir. 1998), which ordered a writ conditioned on retrial, and Barry v. Brower, 864 F.2d 294, 296 (3d Cir. 1988), which ordered a writ conditioned on re-appeal (the relief granted in Barry was re-appeal because the violation in question occurred in the appellate proceeding), simply do not present the same situation as the instant case; Henderson and Barry are not sentence enhancement cases and only involve the "garden-variety" habeas scenario. Similarly, the double jeopardy and other non-sentence enhancement cases cited by the majority do not resolve the question before us.

30

Tucker, 404 U.S. at 447–48. In other words, the relevant inquiry is not an inquiry into the prior convictions themselves; the Supreme Court's characterization of such speculation as being "quite beside the point" suggests that the convictions are not the appropriate targets of our relief. Rather, as Tucker states, the "real question" is whether the result of the sentencing proceeding is suspect. I cannot accept the majority's statement that Tucker's import is somehow limited to S 2255 petitions. Tucker simply does not present itself as an exception to a general rule. Nor has our Court's jurisprudence understood Tucker as such.5 Rather, Tucker appears to reflect a background assumption that resentencing -- providing the sentencing court with the opportunity to correct the infirm sentence that was attacked in the habeas petition -- is the appropriate remedy in habeas challenges to sentence enhancements.

Many federal appellate cases, including some of our own, support the basic concept that resentencing is the default form of relief in habeas challenges to invalid sentence enhancements. The law of our Court is actually quite clear on this point. In Clark, we held that where a Pennsylvania sentencing judge wrongly considered two previous Pennsylvania convictions obtained while Clark was a juvenile but without appropriate juvenile procedures, the appropriate relief on Clark's S 2254 petition challenging the enhanced sentence was resentencing on the later, wrongfully enhanced charge. See Clark, 892 F.2d at 1143–44. In its references to resentencing as the proper remedy,

_____

5. Third Circuit case law clearly states that Tucker itself is applicable beyond the S 2255 context. In Clark, aS 2254 enhancement case, we made several references to the fact that Tucker was the governing precedent. See Clark, 892 F.2d at 1144 ("Thus, under the mandate of United States v. Tucker, the matter must be remanded for resentencing of the 1979 conviction with instruction that the 1974 convictions, obtained in violation of Clark's constitutional right to due process, not be considered in the imposition of the sentence.") (citation omitted); id. at 1149 n.10 ("The only relief permitted under Tucker is resentencing on the subsequent conviction."); id. at 1150 ("Because the 1974 convictions were relied upon by the 1980 sentencing court, Clark is entitled to the relief provided by Tucker and must be resentenced."). That is, we not only afforded resentencing as the relief in a S 2254 case, but also explicitly stated that Tucker controls S 2254 as well as S 2255 cases.

Clark is replete with language about "mandates" and "musts,"6 and refers to resentencing as "[t]he only relief permitted under Tucker." Id. at 1149 n.10. The majority's efforts to explain Clark away on the basis that the sixteen years that had passed since the prior trial made retrial in Clark impracticable are unavailing; these arguments would be equally applicable to Coss's case, in which retrial would require reopening of a simple assault case whose events took place nearly fourteen years ago. Other Courts of Appeals have apparently assumed resentencing as the relief in sentence enhancement cases, and indeed the Seventh Circuit Court of Appeals has specifically read Tucker's holding to extend to S 2254 cases. See, e.g., Crank v. Duckworth, 905 F.2d 1090, 1090 (7th Cir. 1990) ("Tucker holds that `misinformation of constitutional magnitude' -- that is, reliance on an invalid prior conviction-- authorizes relief from the current sentence.") (citation omitted);7 Feldman v. Perrill, 902 F.2d 1445, 1449-50 (9th Cir. 1990) (stating that if the challenged prior conviction is indeed flawed, the appropriate remedy shall be a remand to the Parole Commission for a recomputation of the petitioner's parole eligibility on the later offense without consideration of the challenged conviction);8see also Smith v. Farley, 25 F.3d 1363, 1368 n.10 (7th Cir. 1994) (stating that a petitioner challenging a wrongly enhanced sentence would not be seeking to set aside his original conviction as constitutionally invalid, but would merely be challenging "the constitutionality of his conviction as used to enhance his present sentence"). In fact, Justice Souter has described

_____

6. See, for example, the three excerpts from Clark quoted in note 5 above.

7. Crank, like the instant case, is aS 2254 petition case in which both the prior, allegedly flawed conviction and the subsequent sentence that relied on that conviction as an enhancement were state offenses (both the initial and subsequent Crank convictions were Indiana state convictions).

8. Although Feldman, like Tucker, addresses the use of a flawed previous state conviction in a subsequent federal proceeding, nothing in Feldman suggests that reaching back to the original conviction would be appropriate in any sentence enhancement case. The Ninth Circuit Court of Appeals noted that Feldman was "indistinguishable from Maleng," a S 2254 case. Feldman, 902 F.2d at 1448.

32

the "uniform appellate case law" in this area as suggesting that the wrongly enhanced sentence, not the prior conviction, is the target of the habeas petition. See Custis v. United States, 511 U.S. 485, 512 (1994) (Souter, J., dissenting) (joined by Blackmun and Stevens, JJ.) (pointing out that the Custis majority's holding "does not disturb uniform appellate case law holding that an individual serving an enhanced sentence may invoke federal habeas to reduce the sentence to the extent it was lengthened by a prior unconstitutional conviction"). At the very least, I think it clear that the appellate case law dispels any notion of a "general rule" favoring retrial on the previous conviction in an enhancement case.

I think it equally clear that resentencing is the appropriate remedy in this case, for several reasons implicating both judicial prudence and comity. First, I am not convinced that we even can afford the relief suggested by the majority. Having served his entire sentence on the original 1986 conviction, Coss clearly is not "in custody" on that charge, see Maleng, 490 U.S. at 490, and therefore would not have recourse to the remedy of retrial through a habeas petition at this point. It is unclear to me that we have the power to provide that same relief, the benefits of which are unavailable to the petitioner in a habeas petition challenging a subsequent enhanced sentence, to the respondent in that same petition. I have found no federal case that addresses this question,9 and I believe that we should not reach out to decide this issue unnecessarily when we can instead choose the well-established option of simply conditioning our writ on the Commonwealth's resentencing Coss on the 1990 conviction.

_____

9. A leading treatise on federal habeas procedure notes that Maleng left open this very question. See 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure S 8.2c, at 333 n.20 (3d ed. 1998) ("Maleng . . . left open . . . [the] question whether, in the process of voiding a current sentence enhanced on the basis of an unconstitutionally imposed prior conviction as to which custody has terminated, the prior conviction `itself ' may be voided, thus depriving it
of other collateral consequences in addition to its effect on the sentence currently being served.") (citing Maleng, 490 U.S. at 493-94).